## J. OTIS WETHERBEE *et al.*

*v.*

## SIMON FITCH.

*Filed at Ottawa May 15, 1886.*

1. OFFICERS OF CORPORATION—*power to employ counsel to defend suit.* Where the by-laws of a private corporation for pecuniary gain make it the duty of its president to exercise a general supervision over its entire business, and provide that all the property of the company shall be under his control, and such president for a number of years before had acted as its attorney, and looked after its affairs in the courts, this will be evidence of his·authority to employ attorneys to appear for the corporation and look after its interests.

2. ATTORNEY AT LAW—*power to compromise suit.* The authority of an attorney to prosecute a suit does not involve authority to compromise it. Before he can compromise the suit he must have special authority for that purpose.

3. RATIFICATION—*as to act of attorney in compromising suit.* Where negotiations by an attorney employed to prosecute an ejectment suit in the name of a corporation, but in fact for the benefit of one of its creditors, for the compromise thereof, were well known to the president and secretary of the company intrusted with its affairs, and they and the attorneys frequently advised as to the suit, and they made no objection to taking a sum in money instead of the land, and the company, after the compromise, accepted the benefit of the settlement in the payment of a part of its indebtedness, it was *held,* that its conduct amounted to a ratification of the compromise of its attorneys.

4. REDEMPTION—*by judgment creditor—of the character of judgment under which redemption may be made.* If judgment be entered where no indebtedness actually exists, it can not be used for the purpose of effecting a redemption from a judicial sale against the defendant therein.

5. Where a party indebted by note and mortgage on property of doubtful title, takes for his title, by way of compromise, a less sum than is due from him, which is applied in discharge of the debt *pro tanto*, leaving a deficiency, and a decree in a proceeding to foreclose is rendered against him for such deficiency, such decree will represent an actual existing indebtedness, and a redemption made under it will be good..

6. Where the United States Circuit Court has jurisdiction of a bill to foreclose a mortgage, and pronounces a decree therein, under which property is redeemed, the State courts will have no power to review its action in respect of any supposed or real errors.

7. FRAUD—*submitting cause on stipulation as to facts.* If the material facts of a case are undisputed, and counsel on both sides stipulate as to what those facts are, and submit the questions involved for the judgment of the court upon such stipulation, it does not follow from this that there has been a fraudulent collusion between the attorneys, and this more especially when the agreed facts are true.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. GEORGE W. SMITH, and Mr. F. S. WINSTON, for the appellants:

An attorney has no implied authority to compromise or give up any right of his client. He must show an express authority, founded upon a full disclosure by him. *People* v. *Lamborn*, 1 Scam. 123; *Nolan* v. *Jackson*, 16 Ill. 272; *Jennings* v. *McConnel*, 17 id. 148; *Trumbull* v. *Nicholson*, 27 id. 148; *Wadhams* v. *Gay*, 73 id. 415; *Melvin* v. *Insurance Co.* 80 id. 446; *Whittington* v. *Rose*, 8 Bradw. 234; *Stockton* v. *Ford*, 11 How. 232.

There was no consideration for the Fitch decree, and this may be shown collaterally. *Martin* v. *Judd*, 60 Ill. 78; *Arnold* v. *Gifford*, 62 id. 249.

There was no debt upon which a deficiency decree should have been entered. The debt was merged. Every judgment is for most purposes to be regarded as a new debt. Freeman on Judgments, sec. 217; *Wayman* v. *Cochran*, 35 Ill. 152.

The city assessment proceedings were not operative. *Rich* v. *City*, 59 Ill. 286; *Smith* v. *People*, 75 id. 36.

The condition exacted in 1871 by the city was unwarranted. *City* v. *Barbian,* 80 Ill. 482; *City* v. *Shepard,* 8 Bradw. 602.

Messrs. H. S. & F. S. OSBORNE, for the appellee:

The sole question and issue at the present hearing is, was the money decree against the Cook County Land Company, in the United States Circuit Court, under which the redemption was made, void or not. The land company is not here complaining. Appellants are, for all the purposes of this case, simply the purchasers at the judicial sale made December 13, 1879, and nothing more.

The appellee is, for all the purposes of this case, the purchaser at a subsequent redemption sale, who was also the redeeming judgment creditor. *McLagan* v. *Brown,* 11 Ill. 519.

A debtor has the right to confess judgment in favor of his creditor for the purpose of redemption. *Phillips* v. *DeMoss,* 14 Ill. 410; *Martin* v. *Judd,* 60 id. 78; *Karnes* v. *Lloyd,* 52 id. 113.

The decree of the United States court finding there was an indebtedness for the land company, is conclusive, except for want of jurisdiction or fraud. *United States* v. *Arredondo,* 6 Pet. 691; *Voorhees* v. *Jackson,* 10 id. 449.

This court will not, even in a meritorious case, inquire into the proceedings of the Federal courts in the manner here sought, but will remit suitors to that court. *Sproehnle* v. *Dietrich,* 110 Ill. 202; *Munson* v. *Harroun,* 34 id. 422.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This case has already been decided by us, as may be seen by reference to *Fitch* v. *Wetherbee et al.* 110 Ill. 475. It is unnecessary to repeat here the facts, stated in the opinion, rendered on the former hearing. After the cause had been remanded for further proceedings to the Superior Court of Cook county, appellants, by leave of that court, filed an amended petition, in which it is charged, that the judgment, under

which the redemption took place, was obtained by fraud, and that the facts, constituting such fraud, did not come to the knowledge of appellants, until after the first decision of the case by this court, at the January term, 1884.

The judgment, under which appellee redeemed the tract of land, named in the original petition, to-wit: the north-west quarter of the south-east quarter of section 1, township 39 north, range 14, east of the third principal meridian, in Cook county, from the foreclosure sale, at which the same had been bought by appellants, was rendered, on the 6th day of October, A. D. 1880, by the Circuit Court of the United States for the Northern District of Illinois, in favor of appellee and against the Cook County Land Company, for the sum of $4908.69, with legal interest from its date. It was not a judgment at law, but a deficiency decree in a foreclosure proceeding. It will be necessary to state the facts, leading up to its rendition, in order to understand the grounds, upon which it is alleged to be fraudulent, as against appellants.

In September, 1868, Charles A. Gregory and one Allen claimed to own a part of a lot, fronting seventeen and one-half feet on Madison street, in Chicago. Gregory afterwards bought out Allen's interest. In September, 1868, the common council of Chicago passed an ordinance for opening or extending Franklin street, from Madison street south to Adams street. The required width of this extension necessitated the condemnation, by the city, of the seventeen and one-half feet in question. Proceedings were instituted by the city, under the laws then in force, for the purpose of acquiring the fee to these seventeen and one-half feet. The assessment roll, returned by the commissioners of the board of public works, was confirmed by the council on September 20, 1869. The net damages, assessed by the commissioners, for the value of the seventeen and one-half feet, were $8589.94, and, for the value of the buildings thereon, $4075,—making a total of $12,664.94. In March, 1872, the city gave notice, that it was

ready to pay the $8589.94 to the owners of the property, and, in July, 1872, took possession of the seventeen and one-half feet for a public street, and has since continued in such possession. The city never took possession of the buildings, which were destroyed in the great fire of October 9, 1871. From some time in 1871 down to the spring of 1880, a controversy existed between Gregory and his grantees, on the one side, and the city of Chicago, which claimed under its condemnation proceedings, on the other side, as to the ownership of the seventeen and one-half feet. The proof shows, that, in July, 1871, Gregory tried to get the city officials to pay him the condemnation money, and they were willing to do so upon his procuring a quitclaim from Allen, and giving the city a warranty deed, which, however, he declined to do. ·

On September 3, 1872, Gregory borrowed $15,000 of appellee, giving his note of that date, for the amount, payable five years after date, with interest at the rate of ten per cent per annum, payable semi-annually, and, to secure this note, executed to appellee a mortgage upon the seventeen and one-half feet, providing, that, upon default in payment of interest, the principal might be declared due, which mortgage was recorded September 5, 1872. On November 29, 1872, he conveyed the seventeen and one-half feet to the Cook County Land Company, subject to the Fitch mortgage, which the land company assumed and agreed to pay.

On November 10, 1873, the Cook County Land Company, Gregory acting as its attorney, commenced an ejectment suit in the Superior Court of Cook county against the city of Chicago to recover possession of the seventeen and one-half feet, formerly on Madison street, then a part of Franklin street. This case was tried in the fall of 1876, and a judgment rendered therein on November 4, 1876, in favor of the land company and against the city.

On May 8, 1876, in an action brought in the United States court on the note for $15,000, appellee had obtained judg-

ment against Gregory for $15,907 and costs. On November 13, 1876, appellee, by his solicitors, H. S. & F. S. Osborne, filed a bill, in the United States Circuit Court, against Charles A. Gregory, the Cook County Land Company, the city of Chicago, and others, to foreclose the mortgage for $15,000, which bill, as originally filed, and, as amended, set up the judgment recovered on the note, the conveyance by Gregory to the land company, the assumption by the latter of appellee's debt, the condemnation proceedings by the city, etc., and alleged, that Gregory had had no title to the seventeen and one-half feet, when he borrowed the $15,000, but had fraudulently represented his title to be good, in order to get the money, and that appellee had demanded the condemnation money of the city, but that the city had refused to deliver it. The bill prayed, that, if any title passed to appellee by the mortgage, the seventeen and one-half feet might be sold to pay it, but that, if no title passed, the condemnation fund, due from the city, might be charged with the payment of appellee's mortgage. Answers were put in by the city, by the land company and by Gregory.

On July 28, 1877, the city paid the costs in the ejectment suit and took a new trial under the statute. About this time, Gregory, who was not only the attorney of the land company in the suit at law, and its solicitor in the foreclosure proceeding, but was also its president, authorized Messrs. H. S. & F. S. Osborne to prosecute the ejectment suit, to "see what there was in it for Dr. Fitch." They were engaged in negotiations with the city from time to time, in reference to the payment of the condemnation money, the city refusing to pay interest, or the damages awarded for the buildings, and they claiming both. On April 23, 1879, Gregory withdrew his appearance, as attorney for the land company, the plaintiff in the ejectment suit, and Messrs. H. S. & F. S. Osborne entered their appearance, as attorneys for such plaintiff, by a written stipulation, filed in the case, and signed by

themselves, and by Gregory, and by the attorney for the city. On the same day, the second trial of the suit took place, without a jury, before one of the judges of the Superior Court, who held the case under advisement until July 12, 1879, and then found the issues in favor of the city, deciding the title to be in the latter. Before judgment was entered upon the finding of the court, a motion for new trial was made by the land company, and the case stood on such motion, until the settlement, hereinafter mentioned. On April 12, 1880, the land company withdrew its motion for a new trial, and judgment was rendered, in favor of the city, in accordance with the previous finding of the court. The judgment was so entered, in pursuance of a written stipulation, signed by H. S. & F. S. Osborne, as plaintiff's attorneys, dated April 7, 1880, and filed in the case on April 12, 1880. On April 7, 1880, a written stipulation, entitled in the foreclosure suit, was entered into between H. S. & F. S. Osborne, as solicitors for Fitch, and the solicitor for the city, by the terms of which the city admitted, that the whole amount of the condemnation money, to-wit: $12,664.94, with interest from August 1, 1872, was due from the city "to whomsoever may appear entitled to receive the same." The latter stipulation was filed in the United States court, in the foreclosure suit, on May 3, 1880. In other words, Messrs. H. S. & F. S. Osborne settled the ejectment suit by suffering judgment to go in favor of the city, and, in consideration therefor, received an agreement from the city to pay the amount of money and interest, which they had been claiming.

The objection, made by appellants to this settlement, grows out of the apparently inconsistent position, occupied by the Messrs. Osborne, as solicitors for appellee, *against* the land company in the foreclosure suit, and as attorneys *for* the land company in the ejectment suit. When, however, all the circumstances of the case are taken into consideration,

it does not appear, that any fraud was committed, or that any wrong was intended.

Gregory owed appellee $15,000, and interest from September 3, 1872,—an honest debt, due for borrowed money. To secure it, he had given a mortgage, upon a clouded title, upon seventeen and a half feet of ground, of which the city of Chicago · claimed to be the owner. It is not necessary to determine, whether such claim was valid or not. If it had been successfully maintained, after a contest, the city's · title would have been superior to the title under the mortgage, and · appellee would have had no security for his debt, except such unpaid purchase money, as he might obtain from the city. Gregory had conveyed his equity of redemption to the Cook County Land Company, and, as a part of the consideration for such conveyance, that company had assumed and agreed to pay appellee's mortgage debt. Gregory was a bankrupt. The Cook County Land Company had no money. Under these circumstances, Gregory requested Fitch's attorneys to take hold of the pending ejectment suit, brought to recover the title to the same property, which had been mortgaged to their client, and to do so, for the express purpose of making what they could out of it, towards the payment of appellee's mortgage. Gregory had authority to employ the Osbornes to appear for the land company in the suit at law. For a number of years, he had acted, as its attorney and solicitor, in litigation, pending in the Federal and State courts. He was the originator and founder of the company. He was its president and authorized representative before the public. By the terms of the by-laws, it was "the duty of the president to exercise a general supervision over the entire business of the company; all the property of the company shall be under his control." A debtor, holding a claim against a third person, may deliver it into the hands of his creditor, and authorize suit to be brought upon it, in his own name, for the benefit

of such creditor. Such and such only was the real purport of the employment of appellee's attorneys in this matter.

It is said, however, that the Osbornes had no power to settle the ejectment suit, in the manner already stated, even though they may have been properly empowered to act in it, as the plaintiff's counsel. It is undoubtedly the law, that authority to prosecute a suit does not involve authority to compromise it. Before an attorney can compromise a suit, he must have special authority for that purpose. *People* v. *Lamborn,* 1 Scam. 123; *Nolan* v. *Jackson,* 16 Ill. 272; *Jennings* v. *McConnel,* 17 id. 148; *Trumbull* v. *Nicholson,* 27 id. 149; *Melvin* v. *Lamar Ins. Co.* 80 id. 446. But, in this case, it is a fair conclusion from all the evidence, that the company and its officers authorized the settlement, as made, and ratified it, after it was made. For several years, the Osbornes were negotiating with the city with a view of getting payment for the value of the buildings, as well as the value of the land taken, and, also, with a view of getting interest upon the whole amount to be paid. These negotiations were well known to Gregory, the president, and Watriss, the secretary of the company. They had conversations about them with the Osbornes, and were kept advised about them, during their progress. They made no objections to taking money, instead of land. What they were "solicitous" about was to have the city pay the whole amount of the condemnation money and interest, instead of a part of such money without interest. After the settlement was made, they knew, that judgment in the ejectment suit had been rendered in favor of the city, and that the condemnation money was to go to appellee. They may not have known the details of the settlement. They may not have seen the written stipulation, in which the Osbornes withdrew the motion for a new trial, and conceded the title to the city. But they must have known, that all this was involved in the payment of the condemnation money by the city. The acceptance of such money by the land company and its

mortgagee estopped them from thereafter attacking the title
of the city.    To take the fund and continue the fight for the
land would not have been honest.   Therefore, the knowledge,.
that the city had paid the .money, necessarily implied the
further knowledge, that the city had obtained the title, for
which such payment was made.    That the president of the
company ratified and approved of the settlement will fully
appear, when we come to consider the agreed statement of
facts, filed in the foreclosure suit.

We have thus dwelt upon the manner, in which the eject-
ment suit was disposed of, because it has a bearing upon
what afterwards took place in the foreclosure suit.    The latter
was brought to a hearing, and final decree was entered therein
by the United States court on October 6, 1880.    The evidence
was presented to the court in the form of an agreed state-
ment of facts, reduced to writing, and signed by Gregory, for
himself, and as solicitor of the Cook County Land Company,
and by H. S. & F. S. Osborne, as solicitors for Fitch.    This ·
statement sets forth the execution of the note and mortgage
for $15,000 ;   the condemnation proceedings and amount of
damages, therein awarded;   the conveyance by Gregory to
the land company, and its assumption of the mortgage debt
and agreement to pay it;   the judgment for $15,907 against
Gregory;   the agreement of the city, that there is due from
it to the person entitled thereto, for condemnation money,
$12,664.94,- with interest from August 1, 1872, and the
bankruptcy of Gregory and his discharge therefrom.    The
statement also sets forth, that "the ejectment suit is now in
judgment in favor of the city,    *    *    *    and the title to the
land is now, by such judgment, vested in the city, leaving in
its place the condemnation money in the hands of the city
treasurer."    Gregory, to whom this statement was submitted
before July 26, 1880, was thereby informed of the judgment
and of the city's title to the property.    That judgment, en-
tered on April 12, 1880, refers to the stipulation of April 7,

1880, withdrawing the motion for a new trial, and consenting to the entry of judgment for the city. The statement also refers to the other stipulation of April 7, 1880, between the Osbornes and the counsel for the city, as to the amount to be paid by the city, in these words : "By stipulation on the part of the city on file in this cause." This goes to show, that there' was no concealment of the stipulations, and that the attention of the president of the company was expressly called to them.

The agreed statement of facts also contains these words : "Nothing herein contained is intended to operate to deprive the complainant of any  *  *  *  right he may have to the condemnation money,  *  *  *  and no facts are insisted upon by this defendant, which would deprive him of such money." Thus, the president of the company not only knew, that the city had the title, and was ready to pay the condemnation money, but he was willing to have that money applied to the payment of appellee's debt.

After the hearing of the foreclosure suit upon the pleadings and agreed statement of facts, the judge of the Federal court took the case under advisement, and finally entered a decree, as of October 6, 1880. This decree found, that there was due to appellee, upon his mortgage debt, $23,789.98, from the land company ; that there was due, from the city, $18,881.29, as condemnation money, and that the amount so due, should be paid to appellee upon his mortgage debt, "as the proceeds of said mortgaged premises and interest thereon ;" that the difference between the two sums, to-wit : $4908.69, being the deficiency, or balance due appellee, over and above the amount coming from the city, should be paid to the appellee by the land company, and that execution should issue therefor. This deficiency decree, under which the redemption, complained of, took place, is alleged to be fraudulent, for the reason, that the seventeen and one-half feet of ground were worth $35,000 in April, 1880, and, if the title thereto, instead of being yielded to the city, had been recovered for the land

company in the ejectment suit, the mortgage of appellee would ·
have been paid in full, and no deficiency would have existed.
It is true, that, if a judgment be entered, when no indebted-
ness actually exists, such judgment can not be used for the
purpose of effecting a redemption. (*Martin* v. *Judd*, 60 Ill.
78; *Arnold et al.* v. *Gifford*, 62 id. 249.) But we have already
seen, that the settlement of the ejectment suit was duly au-
thorized and fairly and properly made. This being so, and
the amount realized from such settlement being insufficient,
by the sum of $4908.69, to pay off the full amount, due on
the mortgage, it follows, that the deficiency decree, in this
case, does represent an actually existing indebtedness.

It is said, that the deficiency was made larger than it ought
to have been, because the decree was rendered for the amount
of the original indebtedness, and ten per cent interest thereon,
whereas it should have been rendered for $15,937.16,—the
amount of the judgment, rendered against Gregory on May 8,
1876, and six per cent interest thereon. This is a matter,
which was fairly submitted to the court, which rendered the
decree. That court had jurisdiction over the subject matter
and the parties, and we have no power to review its action.

The deficiency decree is alleged to be fraudulent, as having
been obtained by collusion between the solicitors of appellee
and the solicitor of the land company. The only ground
for this charge is the fact, that the cause was submitted for
hearing upon an agreed statement of facts, and not upon
proofs taken. If the material facts in a case are undisputed,
and the counsel on both sides stipulate, as to what those facts
are, and submit the questions involved, for the decision of the
court, upon such stipulation, it does not necessarily follow,
that there has been a fraudulent collusion. In this case, all
the facts, set up in the agreed statement, are true, nor is it
claimed, that any of them are untrue. But, in addition to
this, the statement shows, on its face, that the solicitor of the
land company did not consent to a deficiency decree, but was

opposed to it. After referring to the prayer of the bill for a deficiency judgment, he inserted in the statement, in his own handwriting, the following words: "And the right to resist such judgment upon all legal and equitable defences is hereby reserved to the said Cook County Land Company."

We fail to see, that any trust relation existed between appellee and appellants, which made it inequitable for appellee to redeem under his deficiency decree. Appellants were purchasers of certain property, belonging to the Cook County Land Company, at a sale under a decree, rendered in a certain foreclosure proceeding, instituted against that company. That sale, as we have decided, was subject to redemption, under the statute, by the land company, during twelve months, after it was made, and by judgment creditors of the land company, during the three months after the expiration of the twelve months. Appellee was such a judgment creditor, as is contemplated by the statute. He exercised his statutory right, and effected a redemption, and obtained a deed from the marshal, in pursuance thereof.

We see no reason to change our former decision. The judgment of the Superior Court is, therefore, affirmed.

*Judgment affirmed.*