(No. 74197.—

IVAN COLVIN, Appellee, v. HOBART BROTHERS, Appellant.

*Opinion filed July 22, 1993.—Rehearing denied October 4, 1993.*

FREEMAN and HARRISON, JJ., dissenting.

Stevenson, Rusin & Friedman, Ltd., of Chicago (Gregory G. Vacala, of counsel), for appellant.

Hasselberg & Rock, of Peoria (Jeffrey B. Rock, of counsel), for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

On February 27, 1989, plaintiff, Ivan Colvin (Colvin), filed an action in the circuit court of Peoria County against the defendant, Hobart Brothers (Hobart), his former employer, requesting the court to declare a settlement contract lump sum petition and order of the Illinois Industrial Commission entered on December 26, 1984, as void and unenforceable. After two complaints were dismissed for failure to state a cause of action, plaintiff filed a second-amended complaint. Defendant again moved to dismiss for failure to state a cause of action. Defendant's motion was denied.

Thereafter, defendant answered the second-amended complaint and filed certain affirmative defenses. Defendant then engaged in some discovery which culminated with the taking of plaintiff's discovery deposition. Then defendant moved for summary judgment and plaintiff filed a cross-motion for summary judgment. The trial court denied defendant's motion for summary judgment and granted plaintiff's motion for summary judgment and remanded the cause to the Illinois Industrial Commission for new proceedings.

Plaintiff's second-amended complaint alleges that he was exposed to welding fumes and smoke during the 19 years that he was employed by Hobart; that he retained attorney Richard Price, who filed a workers' compensation action against Hobart in 1983 (Ivan Colvin v. Hobart Brothers, Case No. 83—OD—80035); that attorney Price settled the case for $20,000, and the settlement contract, fees and costs were approved by the Illinois Industrial Commission; that Hobart issued its check for $20,000 and plaintiff received the net proceeds due him; that plaintiff was not advised by his attorney that this was a settlement in full; that his attorney told him he would receive additional funds from Hobart; that in 1986, plaintiff discovered he was defrauded by his attorney; that he filed a complaint with the Attorney Registration and Disciplinary Commission (ARDC); that the ARDC's investigation was completed in June 1987; and that plaintiff did not agree to the $20,000 settlement nor did he authorize his attorney to make the settlement. Plaintiff requested that the settlement be declared void and unenforceable and that the Industrial Commission be directed to reopen plaintiff's claim against Hobart.

Defendant's motion to dismiss the second-amended complaint was denied. Defendant's answer denied the material allegations of the second-amended complaint and asserted certain affirmative defenses. Then the

defendant proceeded with discovery by use of written interrogatories and a request for production of documents, and taking the discovery deposition of the plaintiff.

On July 29, 1991, defendant filed its motion for summary judgment supported by the pleadings, plaintiff's responses to interrogatories, plaintiff's responses to defendant's request for production of documents, and the transcript of the deposition of plaintiff and exhibits attached to the deposition. Plaintiff filed a cross-motion for summary judgment, which relied on the pleadings and the deposition of the plaintiff taken by the defendant.

The trial court denied defendant's motion for summary judgment but allowed plaintiff's motion for summary judgment, and remanded the cause to the Illinois Industrial Commission for new proceedings. The appellate court affirmed. (229 Ill. App. 3d 1018.) We granted defendant's petition for leave to appeal (134 Ill. 2d R. 315).

The issue presented is whether the trial and appellate courts committed error when they denied defendant's motion for summary judgment and granted plaintiff's motion for summary judgment.

I

The purpose of summary judgment is to determine whether there are any genuine issues of material fact (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240), and summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)). Although summary judgment is an expeditious method of disposing of a lawsuit, it should only be allowed when the right of the moving

party is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240.) The court must consider all the evidence before it strictly against the movant and liberally in favor of the nonmovant. *Purtill*, 111 Ill. 2d at 240.

When the court grants one party's summary judgment motion as to all issues and denies the other party's summary judgment motion, the resulting order is final and appealable because it entirely disposes of the litigation. *Village of Fox Lake v. Aetna Casualty & Surety Co.* (1989), 178 Ill. App. 3d 887, 916-17.

In the case at bar, the appellate court made the following finding:

> "[D]efendant did not depose Price. Other than plaintiff's deposition, defendant did not introduce any substantive evidence as to the circumstances surrounding whether this settlement contract was authorized at the time Price entered it. The agreement alone, although approved by the Industrial Commission, provided no evidence that plaintiff authorized his attorney to settle the claim in full. * * *
>
> The only evidence before the court was that Price settled the case without advising plaintiff of the true facts." 229 Ill. App. 3d at 1022.

Our review of the record reveals that the appellate findings are misplaced. In response to interrogatories submitted by defendant and defendant's request for production of documents, the plaintiff produced the sworn statement of Price given to the ARDC in response to plaintiff's charges against him which are substantially the same as the allegations in plaintiff's second-amended complaint here. Plaintiff also produced correspondence, medical reports, and other relevant documents sent to him by Price, while the case was pending, and by the ARDC following his complaint against Price.

Defendant's motion for summary judgment was supported by the pleadings, plaintiff's deposition with ex-

hibits attached, plaintiff's responses to interrogatories, and plaintiff's responses and documents produced in response to defendant's request to produce.

Plaintiff's motion for summary judgment relies on the oral responses of plaintiff at his deposition and ignores the exhibits he produced and his testimony regarding the exhibits. Plaintiff's assertion that his testimony is unrefuted is also misplaced.

Our review of the record reveals that plaintiff, Ivan Colvin, started to work for Hobart in 1964. Initially, he repaired welding machines. Later he conducted demonstrations and explained the operation of the welding equipment at shops and factories. He claims that fumes produced at the welding sites while conducting demonstrations affected his breathing. Approximately 19 years later, he went on disability. The last day that he worked for Hobart was June 27, 1982. In addition, he applied for and received disability payments from social security.

In June of 1983, he retained Price as his attorney to represent him in a workers' compensation occupational disease action against Hobart for a contingent fee of 20%. The action, entitled Ivan Colvin v. Hobart Brothers, Case No. 83—OD—80035, was settled for $20,000. The settlement, including 20% attorney fees and $168 in costs, was approved by the Industrial Commission in December 1984. The settlement contract was signed by attorneys for both parties. Ivan Colvin's signature was affixed by his attorney. Colvin claims that his signature was not authorized. His attorney asserts that it was authorized. Net proceeds of $15,832 were paid to Colvin after fees and costs were deducted. The $20,000 settlement check was made payable to Colvin and his attorney. Colvin concedes that he authorized Price to endorse his name to the check, that he received a photocopy of the check and the net proceeds by way of a check drawn upon attorney Price's client trust account.

Colvin's principal complaint against his attorney is that he did not authorize the settlement in full and that he was told that the sum paid was a partial payment. Price disputed this allegation.

Colvin filed a complaint against his attorney with the ARDC in April 1986, alleging misconduct. The ARDC completed its investigation in June 1987, and concluded that no action would be taken against attorney Price. Colvin did not take any action against Price, although the ARDC suggested that he could engage his own counsel if he desired to pursue any private remedy against Price.

It is undisputed that Hobart is innocent of any wrongdoing. Nevertheless, plaintiff wants the Industrial Commission case to be reopened nine years after it was approved by that body. Plaintiff's allegation of fraud in the second-amended complaint was directed at Price. After a complete investigation, the ARDC concluded that Price did not commit any fraud against the plaintiff. The record supports this conclusion.

In 1972, when plaintiff was 40 years old, he first noted breathing difficulty when climbing stairs. He smoked between 20 and 40 cigarettes a day from the age of 24. In 1972, his doctor recommended that he quit smoking. His symptoms continued to increase in severity. In 1973, he began seeing a pulmonary specialist. He stopped smoking in 1974. His treating physician, Dr. Stanley Bugaieski of Peoria, continued to treat him from 1973 through the period including the workers' compensation proceedings. Even prior to the workers' compensation proceedings, Dr. Bugaieski diagnosed plaintiff's condition as chronic obstructive lung disease caused by his cigarette consumption.

When plaintiff retained attorney Price to file his workers' compensation action, he did not tell his attorney that his own treating physician's diagnosis concluded

that his disease was not work related, but was due to smoking.

On January 4, 1984, attorney Price wrote to plaintiff that he would set the case for an early trial as soon as he could discuss the case with Dr. Bugaieski "to hopefully bring him around to our point of view." Their view was to have Dr. Bugaieski testify that plaintiff's condition, although due to smoking, was aggravated by his working conditions at Hobart.

On October 8, 1984, plaintiff was examined by Dr. Cugell, Hobart's expert. Dr. Cugell is a nationally recognized pulmonary expert who taught Dr. Bugaieski in medical school. He also concluded that plaintiff's condition was not work related but was due to smoking.

On October 23, 1984, attorney Price sent Dr. Cugell's report to Colvin. He wrote, "I am afraid we are in for one hell of a fight ***. *** [I]f your condition is really related to smoking and has nothing to do with welding fumes, then we should consider possibly a prompt resolution to this matter at a very reduced amount. What do you want to do?"

Attorney Price's sworn testimony at the ARDC hearing, which is part of the record, reveals that Price had several conversations with his client in November and December 1984. "I told him that they would pay $20,000 and that would be it. And he said is that all we can get and I said that's all I think your case is worth, Ivan, because of the problems—the main thing being your own doctor said it was not work related. We'll lose on that issue alone. *** The settlement was accepted by Ivan right around December 20th, 1984— *** December 21st of '84, Maciorowski sent me the settlement contracts for Ivan to sign and I called Ivan ***. *** [A]nd he says, 'I can't come in. I'm too sick.' *** 'Why don't you sign the document for me?' And I said, 'All right, I'll do that.' "

This contract was signed by both attorneys and approved by the Industrial Commission. The money was paid and proceeds distributed to the plaintiff as previously stated.

It is obvious that the appellate court erred when it affirmed summary judgment for the plaintiff. The error is manifested by its conclusion that "[t]he only evidence before the court was that Price settled the case without advising the plaintiff of the true facts." (229 Ill. App. 3d at 1022.) The appellate court was required to consider *all* of the evidence before it. It failed to do so. Therefore, it could not correctly conclude that there was no genuine issue of material fact. Accordingly, summary judgment for the plaintiff should be reversed.

As previously stated, defendant's motion for summary judgment was supported by the pleadings, plaintiff's answer to defendant's interrogatories, documents produced by plaintiff in response to defendant's request for production of documents, and the transcript of plaintiff's deposition with attached exhibits. Viewing this evidence in the light most favorable to the plaintiff and most strongly against the defendant (*Purtill*, 111 Ill. 2d at 240), we conclude that summary judgment should have been entered for the defendant. The evidence supports the fact that plaintiff was aware his treating physician concluded that his physical condition was due to smoking and was not work related. Although this diagnosis was made before the plaintiff went on disability, he did not disclose this fact to his attorney when the workers' compensation case was filed. His attorney tried to make the best of this difficult situation by seeking to develop a theory of aggravation of a pre-existing condition. He kept the plaintiff informed by correspondence, which is in the record. Defendant's expert also concluded that plaintiff's condition was not work related. As stated above, this led to discussions between the plaintiff and

his attorney which resulted in the settlement. The ARDC did not find any actionable misconduct on the part of plaintiff's attorney. Therefore, plaintiff's allegation of fraud against his attorney is not supported by the record.

Plaintiff concedes that Hobart, his employer, did not commit any wrongdoing against him. Nevertheless, the trial and appellate courts held that the final disposition of plaintiff's claim by the Industrial Commission is void and unenforceable and the claim should be retried. We find no basis in law, or in fact, in the record before us, which justifies the judgments of the trial and appellate courts. Therefore, the appellate court erred in affirming the trial court's denial of defendant's motion for summary judgment.

## CONCLUSION

Accordingly, the orders of the trial and appellate courts granting summary judgment in favor of plaintiff and denying summary judgment in favor of defendant are reversed and the cause is remanded with direction that the trial court enter summary judgment in favor of defendant.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded with directions.*

JUSTICE FREEMAN, dissenting:

The majority correctly concludes that the appellate court did not consider all of the evidence available in ruling on the cross-motions for summary judgment. And it is true enough that that evidence would tend to show Colvin knew of his physician's opinion that cigarette smoking, not exposure to welding fumes, was the likely cause of Colvin's breathing difficulties. But having keenly noted what that evidence would tend to show, the

majority misapprehends its significance in disposing of the summary judgment motions.

The issue in this case is simply whether Colvin was advised by his counsel in the workers' compensation action that the settlement amount of $20,000 was all Colvin was entitled to on the claim. The issue is not whether Colvin was made aware of the root cause of his breathing difficulties. Yet the evidence the majority points to as overlooked by the appellate court is relevant only for resolving that issue, not whether Colvin was advised by counsel as to the settlement. The majority finds no difficulty in concluding that proof of Colvin's awareness of the cause of his breathing difficulties is proof that Colvin was advised about the limited amount of the settlement. I do. Whether Colvin was, in fact, so advised remains unresolved and is more properly a matter for disposition by a trier of fact. I believe both summary judgment motions should have been denied.

JUSTICE HARRISON, also dissenting:

I respectfully dissent.

It is firmly established in Illinois that an attorney who is employed to represent his client in litigation has no authority to compromise, to consent to a judgment against his client, or to give up or to waive any right of his client in the absence of the express consent or authorization of that client. (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 11.) That is to say, an attorney who is authorized to represent a client in litigation does not necessarily possess the authority to conclude a settlement but must receive express consent or authorization to do so (*McAllister v. Hayes* (1988), 165 Ill. App. 3d 426, 427-28). (*Kazale v. Kar-Lee Flowers* (1989), 185 Ill. App. 3d 224, 227; *Knisley v. City of Jacksonville* (1986), 147 Ill. App. 3d 116, 120.) Indeed, over a century ago this court recognized as "undoubtedly the law" that the

authority to prosecute a suit does not involve authority to compromise it and that before doing so an attorney must have special authority for that purpose. *Wetherbee v. Fitch* (1886), 117 Ill. 67, 75.

The dispositive question in this action to declare void and unenforceable the order of the Illinois Industrial Commission approving the settlement of the parties is whether plaintiff's counsel had the authority necessary to settle plaintiff's workers' compensation claim in full. The record shows that the answer to this question remains very much in dispute. The plaintiff alleges in his second amended complaint that his attorney did not advise him, at the time in question, that counsel had entered into a full and final settlement of plaintiff's claim; that after the settlement had been approved by the Illinois Industrial Commission in December 1984, plaintiff's attorney represented to him that counsel was still pursuing plaintiff's workers' compensation claim; that plaintiff did not agree to a settlement in full of $20,000; and that he did not authorize his attorney, who affixed plaintiff's signature to the settlement contract without plaintiff's knowledge, to enter into such a settlement. In his discovery deposition plaintiff testified consistently with these allegations, stating, among other things, that counsel had told him not only that he was negotiating with defendant's attorneys "for back pay and back pay only" but also that the check plaintiff received was for "back pay." Plaintiff said that counsel had told him in December of 1984 that thereafter plaintiff would receive, in addition to the partial settlement of $20,000, two-thirds of his pay "for life" and that if plaintiff should die, his widow would receive that amount. Plaintiff indicated further that counsel had first advised him in April of 1986 that his workers' compensation case had been settled in full.

Concerning the question of counsel's authority to settle in full plaintiff's workers' compensation claim, the record includes as well the sworn statement of plaintiff's counsel, at the disciplinary hearing, indicating that plaintiff had, in fact, accepted the defendant's offer of $20,000 as full and final settlement, that plaintiff had asked counsel to sign the settlement contract for him because plaintiff was too ill to come to counsel's office to do so, and that, by inference, counsel had had the authority necessary to settle plaintiff's claim. In effect, the majority has chosen to believe the version of events testified to by plaintiff's counsel, according him credence because, in large part, of plaintiff's knowledge of the conclusion of both his treating physician and defendant's expert that his condition was not work related but was, instead, caused by smoking. The majority has thereby resolved in favor of the defendant the crucial factual dispute existent in this record. Such a determination, while appropriate for the trier of fact, is inappropriate upon a motion for summary judgment. In my view the existence here of a genuine issue of material fact (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)) precludes the entry of summary judgment in favor of either of these parties.

For the foregoing reasons I would reverse the judgments of the circuit and appellate courts granting the plaintiff's motion for summary judgment, affirm the judgments of the circuit and appellate courts denying defendant's motion for summary judgment, and remand the cause to the circuit court for further proceedings.