NOTICE
Decision filed 07/19/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200327-U

NO. 5-20-0327

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| DONALD G. GADDIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 18-L-112 |
| | ) | |
| WILLIAM LANNOM, | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's order granting summary judgment in favor of the defendant, William Lannom, and against the plaintiff, Donald Gaddis, on Gaddis's malicious prosecution claim is affirmed where Gaddis cannot demonstrate that Lannom lacked probable cause to file the underlying petition for stalking no contact order against him.

¶ 2     The plaintiff, Donald G. Gaddis, appeals from an order of the circuit court of Williamson County, which granted summary judgment in favor of the defendant, William Lannom, in a malicious prosecution action. On appeal, Gaddis contends that the trial court erroneously granted summary judgment because Lannom lacked probable cause to file a

1

stalking no contact order against him, and he suffered special damages from the malicious prosecution. For the reasons that follow, we affirm.

¶ 3                                          I. BACKGROUND

¶ 4      This claim arises from Lannom seeking a stalking no contact order against Gaddis. Lannom was employed as a police officer for the City of Marion when he had a face-to-face encounter with Gaddis. Specifically, on October 20, 2017, Gaddis and his neighbor, Dorothy McCombs, had a dispute over a tree overhanging onto Gaddis's property. The police were called on Gaddis, and Lannom and officer Bryan DeMattei were dispatched to the neighborhood. Gaddis was eventually arrested and was released later that same night. He maintained that he was wrongfully arrested.

¶ 5      Thereafter, on March 25, 2018, Gaddis confronted DeMattei at DeMattei's home about the earlier arrest. DeMattei and another officer, Sam Ward, were standing outside the residence at the time. Gaddis was again arrested during the encounter by the Williamson County Sheriff's Department. After Gaddis was arrested, his vehicle was inventoried; two speed loaders for a revolver, a holster for a pistol, and a personal notebook that contained references to Lannom and DeMattei were discovered inside. Lannom was informed about this incident and the notebook. In the notebook, Gaddis made notes about his interactions with his neighbors and the police, and, with regard to Lannom, made the following notations:

> Entry dated January 10, 2018, "Police: Lannom lying. Blocking street."
> Entry dated February 26, 2018, "Lannom, cars blocking (record) roadway (comments)."
> Entry dated March 7, 2018, "MRN Police: (those involved) wrongful arrest and misconduct."

2

Entry dated March 25, 2018, "Lannom, DeMatti [*sic*], Woman, no crime, police breaking law, why called, 2 said civil matter, private property sign, game comment, cop comment about limbs, preconceived plan arrest, report why called, blocked road 3 cars that night, call w/Lannom (lied), harassment, next day looking at tree, coaching for OP."

¶ 6   On March 28, 2018, after learning about DeMattei's encounter with Gaddis and the notebook, Lannom filed a verified petition for stalking no contact order against Gaddis. He attached the following statement to his petition:

"On 10-20-17 Officer Lannom of the Marion Police Department was on duty from 1600-0200 hrs. While on duty I came in contact with Donald Gaddis, while assisting Officer DeMattei during a call for service. Donald was arrested as a result of the call for service. Since 10-20-17, I have not had contact with Donald.

On 03-25-18, Donald arrived and entered Officer DeMattei's residence uninvited, while Officer DeMattei was off duty. The Williamson County Sheriff's office was contacted, and Donald was subsequently arrested. After an inventory of Donald's vehicle was performed, Deputies located the following items. Two speed loaders belonging to a revolver style pistol, 1 pistol holder and a notebook. Inside the notebook were many writing [*sic*] of a disturbing nature from Donald.

Donald had listed my name as well as Officer DeMattei's name, 'wrongful arrest, call with Lannom (lied), caused to lose job.'

I am asking that this order be granted, as Donald has already displayed his total disregard for the law and others['] property as well as others['] safety. I believe the actions that Donald has displayed to be of a subject that is not in the right state of mind. Donald displays behavior that I believe makes him a danger to the public. I am asking that this order be granted for myself as well as my property."

¶ 7   That same day, the trial court entered an emergency, *ex parte*, stalking no contact order against Gaddis, which prohibited him from threatening to commit or committing stalking directly or through a third party and from contacting Lannom in any way. It also ordered Gaddis to stay at least 500 feet away from Lannom, his home, and his workplace;

noted that all attempts at communication would be considered harassment; and prohibited Gaddis from posting anything on social media concerning Lannom.[1]

¶ 8    On June 14, 2018, Gaddis filed a complaint against Lannom based on the stalking no contact order, alleging malicious prosecution. In the motion, Gaddis asserted that Lannom lacked probable cause to initiate the stalking no contact proceedings in that Gaddis had not engaged in any conduct that would cause Lannom to reasonably believe that he was in danger. Gaddis also contended that Lannom's actions were malicious and made with the intent to harm him in that Lannom wanted to gain leverage against Gaddis with regard to ongoing disputes and to embarrass him. Gaddis argued that he suffered the following damages from the malicious prosecution: a loss of reputation; emotional distress, which manifested as anxiety, loss of sleep, and depression; costs associated with retaining an attorney to defend himself in the stalking no contact proceedings; and a special injury in that his movement was restricted because he was ordered to stay at least 500 feet from Lannom, who, as a police officer, routinely moved about the community, and he feared violating the no contact order while he was in the community.

¶ 9    On April 22, 2020, Gaddis filed a motion for summary judgment, contending that Lannom lacked probable cause to believe that any acts of stalking were directed at him and

---

[1]The stalking no contact order contained definitions from a previous version of section 10 of the Stalking No Contact Act, which included "communicat[ion] to or about" the person filing the petition as a course of conduct that was considered stalking. 740 ILCS 21/10 (West 2016). This version of the statute was in effect at the time that the emergency order was entered. However, in *People v. Relerford*, 2017 IL 121094, ¶ 63, and *Flood v. Wilk*, 2019 IL App (1st) 172792, ¶ 43, this prohibition against communication to or about the person was found to have infringed on the accused's constitutional right to free speech because it would prohibit constitutionally protected speech. The current version of the statute has removed this language from the definitions section. See 740 ILCS 21/10 (West 2020).

to believe that Gaddis had engaged in a course of conduct of two or more acts of stalking; he argued that his only contact with Lannom occurred in October 2017. Gaddis also contended that he suffered special damages from Lannom's malicious prosecution in that it was part of an overall pattern of harassment against him by the Marion police officers.

¶ 10 Attached to the motion was Gaddis's verified affidavit, which stated that his problems with the Marion Police Department started in October 2017 when he had a dispute with his neighbor, who called the police on him. One of the officers who was dispatched to the scene was Lannom. He talked to Lannom and another officer for approximately 10 minutes before he was arrested. He was taken to the police department but was released after posting bail; he indicated that charges were never brought against him for that arrest. The following day, the Marion police officers returned to the neighborhood and spoke to his neighbor, encouraging her to file an order of protection against him, which she did.

¶ 11 After Gaddis was released from jail, he returned home but was prevented from accessing his driveway because three police vehicles were blocking it. He then called Lannom, who told him that the officers were on another call. He believed that Lannom was lying. After his arrest, he noticed that he was under scrutiny, and he was negatively affected by the harassment and false accusations. He was also being harassed by his neighbors, and he sought police intervention, but they took no action. Because of his constant arrests, the orders of protections entered against him, and the harassment he experienced, he could not comfortably perform his job as a health inspector, he lost the public's trust, and he discontinued his employment.

¶ 12    On March 25, 2018, Gaddis was driving by officer DeMattei's home when he noticed that DeMattei was in the driveway with another officer, Sam Ward. He decided to stop and talk to DeMattei about what DeMattei had done to him and how it had negatively impacted his life. When he approached the two officers, DeMattei walked away without saying anything to him and went inside the home. Ward then told him that he should leave. As Gaddis attempted to get back into his vehicle, Ward "took [him] to the ground" and would not allow him to leave. DeMattei then came out of the house, and the Williamson County Sheriff's Department was called. He was charged with a felony, and those charges were still pending. At his preliminary hearing, Williamson County deputy sheriff William Oglesby testified that Gaddis was arrested, and his vehicle was towed and inventoried. Oglesby testified that the vehicle was not searched, and no police officer would have authority to search it. However, in another proceeding, DeMattei testified that he was permitted to search the vehicle. During the search, Gaddis's notebook was discovered, and DeMattei read its contents. DeMattei told Lannom about the notebook and then Lannom sought a stalking no contact order against Gaddis. Gaddis stated that if Lannom had not learned about the incident at DeMattei's residence, Lannom would not have brought the stalking no contact proceedings against him.

¶ 13    Gaddis also stated that Lannom withdrew his stalking no contact case, Lannom had no evidence to support the verified petition because Gaddis's last contact with him was in October 2017, and there was nothing that occurred during that incident that warranted a stalking no contact order. He stated that Lannom's conduct was part of a pattern of harassment and false arrests engaged in by the Marion Police Department; he relayed some

6

incidents where he was arrested by the police department, and the charges were subsequently either dropped or dismissed.

¶ 14    Also attached to Gaddis's motion for summary judgment was Lannom's January 29, 2020, discovery deposition, at which he testified that he had no contact with Gaddis prior to October 2017. During that encounter, Gaddis was extremely confrontational, but Lannom acknowledged that he did not feel personally threatened. He also acknowledged that there was nothing that occurred that night to warrant a stalking no contact order against Gaddis. However, shortly after Gaddis's arrest, Gaddis started regularly driving around the police department yelling obscenities, giving them the middle finger, and driving through the parking lot; he noted that this went on for years. He had personally observed this and acknowledged that this was the only contact that he had with Gaddis after that initial encounter. As a precautionary measure, whenever Gaddis drove around the parking lot, someone would inform the rest of the officers via the radio. There were two or three times when he was the only officer in the parking lot as Gaddis drove by yelling out of the vehicle's window; he believed that the yelling was directed at him. He also heard that Gaddis had shown up at two judges' residences uninvited and placed unwanted signs in their yards. He was afraid that Gaddis would come to his house, so he had his wife and children stay at a relative's house for two weeks.

¶ 15    Lannom also testified that he initiated the stalking no contact proceedings because Gaddis's notebook mentioned his name, his coworker's name, and the alleged victim of Gaddis's initial crime; Gaddis had already gone to the other two individuals' residences to confront them about Gaddis's arrest; and he was afraid that Gaddis would come to his

7

residence next. He acknowledged that if he had not known about Gaddis going to DeMattei's residence, he would not have sought a stalking no contact order against Gaddis. He also acknowledged that he had never seen Gaddis's notebook, but he was told by one of the Williamson County deputies about its contents.

¶ 16 Lannom testified that at the plenary hearing for the stalking no contact order, he withdrew his petition because Gaddis had not made any contact with him since the emergency order was entered. He explained that, during the time between when he initially sought the emergency order and the preliminary hearing, Gaddis was still driving around the police department while yelling at the officers, but it had not happened to him as much, and Gaddis had not shown up at his residence, which had been his primary concern. At the time that he withdrew the petition, he did not think that Gaddis posed a risk to him.

¶ 17 Also attached to the motion was DeMattei's October 3, 2019, discovery deposition, at which he testified that a Williamson County sheriff's deputy showed him Gaddis's notebook, and he shared its contents with Lannom. He thought that Lannom should know about the notebook because Gaddis had come to his house while he was off duty.

¶ 18 On July 27, 2020, Lannom filed a cross-motion for summary judgment, contending that a malicious prosecution claim required a plaintiff to demonstrate that defendant initiated the underlying lawsuit without probable cause and with malice; and plaintiff suffered a special injury beyond the usual expense, time, or annoyance of defending the underlying action. Lannom argued that Gaddis was not entitled to summary judgment as a matter of law because Lannom had probable cause to file the petition for a stalking no contact order.

¶ 19    In support, he points to the following facts. Since October 20, 2017, Gaddis had developed hostile feelings for the Marion Police Department, which led to numerous disputes and Gaddis filing at least five other civil lawsuits against individual police officers. Gaddis had admitted to regularly driving by the police department and making eye contact with the officers in the parking lot. Gaddis was arrested when he attempted to confront DeMattei at DeMattei's residence, and he had two speed loaders for a revolver and a holster for a pistol in his vehicle, which would lead a reasonable person to believe that Gaddis had access to a firearm. He also had a notebook that contained repeated references to Lannom, which were repetitive to the point of being obsessive and could reasonably be read as hostile. Lannom believed that Gaddis would eventually confront him at his own home. He believed that Gaddis was going down a list and confronting people who he felt had wronged him. Thus, Lannom contended that the undisputed facts would have led a reasonable person of ordinary care and prudence to believe or to entertain a sound suspicion that Gaddis committed the offense of stalking and that he had an objective, reasonable basis to file the stalking no contact petition.

¶ 20    Also, Lannom asserted that Gaddis had suffered no special damages in that (1) Gaddis agreed with the significant facts contained in the petition; (2) Gaddis voluntarily discontinued his employment as a health inspector before the petition was filed; (3) there was no evidence that the petition negatively impacted his future job prospects as he testified in his deposition that he had not looked for alternative employment; (4) he testified in his deposition that he could not recall anyone mentioning the petition to him; (5) there was no evidence that the petition affected his reputation; (6) there was also no evidence that the

9

petition was the cause of the various criminal charges filed against him; (7) he had not needed any emotional, psychological, and/or psychiatric treatment associated with the filing of the petition; (8) he did not require medical treatment for any physical manifestation of injuries arising from the petition; (9) there was no evidence that he lost any business opportunities as a result of the petition; and (10) the fact that the Williamson County courthouse staff knew about the petition was not special as that was an inherent, natural component of litigation.

¶ 21 Attached to the cross-motion for summary judgment was Gaddis's January 29, 2020, discovery deposition, at which he testified that he initially encountered Lannom when Lannom was dispatched to his house in October 2017. Gaddis's neighbor had called the police on him because he had trimmed a tree that was growing over his property line. There was a dispute about the tree limbs, and Gaddis went to his neighbor's house to tell the neighbor to mind his own business. Lannom told him that he could not go over to his neighbor's house, but he believed that there was nothing illegal about his conduct. DeMattei subsequently arrested him for disorderly conduct, even though the other officers had said that the incident was a civil matter. He claimed that he did not know Lannom; had no contact with Lannom; and the Marion police officers had animosity toward him, but he did not have any animosity toward Lannom. That same night, after he was released from jail, he contacted the police department to report that he was being harassed by their police officers; he testified that three police cars were blocking his driveway to protect his neighbor. He ended up talking to Lannom, who was on duty at the time, and Lannom told him that the officers were there on another case, which he believed was a lie. He later

learned that there was a neighborhood meeting about him, and Lannom attended that meeting. He claimed that he had been falsely arrested several times, and he made a sign stating that.

¶ 22    Gaddis lived within one block of the Marion Police Department, and he regularly drove through the department's parking lot to get to his house. He acknowledged that he probably made eye contact with officers who were in the parking lot but explained that it was not on purpose. He also acknowledged that he purposefully drove through the parking lot after he was falsely arrested and after the stalking no contact order was entered against him. He admitted going to DeMattei's house to confront DeMattei about wrongfully arresting him. He denied going into DeMattei's garage and denied reaching for a golf club. He explained that DeMattei and another off-duty officer were standing outside, and when he got out of his vehicle, he calmly stated that DeMattei's actions had negatively impacted his life. Thereafter, he was tackled, and both officers searched his vehicle.

¶ 23    On September 1, 2020, Gaddis filed a response to Lannom's cross-motion for summary judgment, contending that Lannom lacked probable cause to file the stalking no contact order against him because Lannom had not demonstrated that he engaged in a course of conduct toward Lannom that would cause a reasonable person to fear for his safety. In support, Gaddis noted that he and Lannom's initial encounter was their only face-to-face encounter, Lannom did not feel threatened by Gaddis driving through the police department's parking lot, Lannom was not present at DeMattei's residence on the day that Gaddis confronted DeMattei, Lannom never personally saw his notebook, and Gaddis's personal thoughts written in his own notebook posed no threat to Lannom.

11

¶ 24    On September 10, 2020, Gaddis filed a supplemental memorandum for special damages, arguing that he sustained additional, special damages in that the temporary stalking no contact order infringed on his constitutional rights of free speech by prohibiting him from communicating to or about Lannom. Thus, Gaddis requested that the trial court rule that this infringement and threat constituted special damages.

¶ 25    On September 16, 2020, the trial court entered an order granting summary judgment in favor of Lannom and against Gaddis. In the order, the court focused on the probable cause and special damages elements of malicious prosecution. The court found that, as a matter of law, Lannom had probable cause for bringing the petition against Gaddis. As for special damages, the court found that Gaddis's claims of loss of reputation, emotional distress, and monetary loss for having to hire an attorney to defend against the petition were not considered special damages. With regard to his claim that he feared moving about in the community, the court noted that there was no claim that Gaddis actually ran into Lannom while out in the community, and this claim was akin to anxiety. The court noted that Gaddis's constitutional claim was new in that it did not appear in his complaint and did not appear in the depositions. The court also noted that the emergency no contact order was in effect for 21 days, there was no evidence that Gaddis suffered any injury in those 21 days, and there was no case law submitted that would cause the court to presume an injury during the 21 days. Thus, the court found that the evidence did not support a finding of special injury. Gaddis appeals.

¶ 26                              II. ANALYSIS

¶ 27    On appeal, Gaddis contends that the circuit court improperly granted summary judgment in favor of Lannom on his malicious prosecution claim because: (1) there was no probable cause to file a stalking no contact order against him, and (2) he had suffered special damages as a result of the malicious prosecution.

¶ 28                          A. Summary Judgment

¶ 29   Summary judgment is properly entered where the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. This relief is an appropriate tool to employ in the expeditious disposition of a lawsuit, but it should only be allowed when the right of the moving party is clear and free from doubt. *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 169-70 (1993). Our role is to determine whether the circuit court correctly found that no genuine issue of material fact existed and whether it correctly granted Lannom's cross-motion for summary judgment and denied Gaddis's motion. *Fitzwilliam v. 1220 Iroquois Venture*, 233 Ill. App. 3d 221, 237 (1992). Where, as in here, the parties have filed cross-motions for summary judgment, they agree that only questions of law are involved, and the court may decide the issues based on the record. *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958). However, the filing of cross-motions for summary judgment does not establish that there is no genuine issue of material fact or obligate the court to grant summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The purpose of summary judgment is to determine the presence of triable issues of fact. *Amin v. Knape & Vogt Co.*,

13

148 Ill. App. 3d 1075, 1077 (1986). When determining whether summary judgment is appropriate, courts should construe the pleadings liberally in favor of the nonmoving party and strictly against the moving party. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Summary judgment is proper where plaintiff has failed to establish any element of the cause of action. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). This court reviews appeals from orders granting summary judgment *de novo*. *Id.*

¶ 30                                 B. Malicious Prosecution

¶ 31    To prevail on a claim of malicious prosecution, plaintiff must prove the following elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding by defendant against plaintiff, (2) the termination of the proceeding in plaintiff's favor, (3) the absence of probable cause for such proceeding, (4) malice, and (5) special damages. *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, ¶ 11. To sustain an action for malicious prosecution, plaintiff must prove each element. *Id.* In this case, the elements in dispute are probable cause and special damages. Because we find that Gaddis has failed to establish the probable cause element, we need not determine whether he has shown that he suffered special damages.

¶ 32    Probable cause is a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. *Howard v. Firmand*, 378 Ill. App. 3d 147, 150 (2007). Probable cause to arrest an individual is distinct from whether there is probable cause to prosecute. *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 115. Probable cause to prosecute is determined at the time of subscribing the complaint. *Howard*, 378 Ill. App. 3d at 150.

14

There must be an honest belief by the complainant at the time of subscribing a criminal complaint that another is probably guilty of an offense; it is immaterial that the accused may thereafter be found not guilty. *Id.* Probable cause depends on the facts as they would have appeared to a reasonable person in the accused's position. *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 655 (2002). The existence of probable cause is a mixed question of law and fact. *Howard*, 378 Ill. App. 3d at 150. The question of whether the circumstances alleged to show probable cause are true is a question of fact; but, if true, whether those circumstances amount to probable cause is a question of law to be decided by the trial court. *Id.*

¶ 33    Section 10 of the Stalking No Contact Order Act defines stalking as follows:

> " 'Stalking' means engaging in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace, school, or place of worship, or the safety of a third person or suffer emotional distress." 740 ILCS 21/10 (West 2020).

Also, course of conduct is defined as follows:

> " 'Course of conduct' means 2 or more acts, including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, or threatens a person, workplace, school, or place of worship, engages in other contact, or interferes with or damages a person's property or pet." *Id.*

Contact includes the following:

> "any contact with the victim, that is initiated or continued without the victim's consent, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued, including but not limited to being in the physical presence of the victim; appearing within the sight of the victim; approaching or confronting the victim in a public place or on private property; appearing at the workplace or residence of the victim; entering onto or remaining on property

15

owned, leased, or occupied by the victim; placing an object on, or delivering an object to, property owned, leased, or occupied by the victim; and appearing at the prohibited workplace, school, or place of worship." *Id*.

¶ 34 Here, Gaddis contends that Lannom lacked probable cause in that he could not have reasonably believed that Gaddis had engaged in two or more acts of stalking against him. We disagree. Lannom initially encountered Gaddis in October 2017 when he was dispatched to Gaddis's residence because Gaddis had a dispute with a neighbor. This encounter ultimately led to Gaddis's arrest, which Gaddis believed was wrongful. Then, the same day of the arrest, Gaddis reported that he was being harassed by Marion police officers to Lannom, and Gaddis believed that Lannom had lied in his response to that report. From October 2017 through March 2018, Gaddis routinely drove by and through the parking lot of the Marion Police Department, where Lannom was employed, and made eye contact with the officers standing outside. Lannom testified at his deposition that, at various times, when he was standing outside, he observed Gaddis yelling obscenities and "flipping the bird" as he drove by; Lannom believed that this was directed at him. Gaddis also entered the property of another police officer without permission, which again led to his arrest. After his arrest, his vehicle was searched, and it was discovered that he had a weapon's holster and speed loaders for a revolver in his possession. Gaddis also had a notebook that contained writings suggesting that he harbored animosity toward Lannom. In various places in the notebook, there were statements that accused Lannom of lying and misconduct regarding Gaddis's wrongful arrests and reports of harassment. Gaddis was confrontational with some of the individuals referenced in the notebook, and it was reasonable for Lannom to fear that Gaddis would confront him next. Under these

16

circumstances, we find that Gaddis engaged in a threatening course of conduct consistent with the definition of "stalking" and that a person of ordinary care would reasonably believe or entertain an honest and sound suspicion that Gaddis engaged in acts of stalking against him. Thus, Gaddis, as a matter of law, cannot demonstrate that Lannom lacked probable cause to file the petition for stalking no contact order against him. Accordingly, we find that the trial court did not err in granting summary judgment in favor of Lannom and against Gaddis.

¶ 35                                III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Williamson County.


¶ 37    Affirmed.