(No. 44488.—

THE PEOPLE *ex rel.* RICHARD B. OGILVIE, Petitioner v. JOHN W. LEWIS, Secretary of State, Respondent.

*Opinion filed October 4, 1971.*

Original Petition for *Mandamus*.

WILLIAM J. SCOTT, Attorney General, JUSTIN A. STANLEY and ROBERT A. HELMAN, all of Chicago, for petitioners.

DRACH, TERRELL, and DEFFENDAUGH, of Springfield, for respondents.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

An act entitled the "Transportation Bond Act," providing for the issuance, sale, and retirement of transportation bonds of the State of Illinois in the amount of $900,000,000, was passed by the 77th General Assembly on June 28, 1971, and approved by the Governor on July 2, 1971. Pursuant to the provisions of that Act, Richard B. Ogilvie, Governor of Illinois, petitioner herein, determined that $100,000,000 of the transportation bonds should be sold at the earliest practicable time and requested John W.

Lewis, Secretary of State, respondent herein, to prepare advertisements for bids for the sale of the bonds as provided by the Act. Respondent refused to comply with petitioner's request on the ground that there were serious questions concerning the validity of the Act under the constitutions of the United States and the State of Illinois. In this original action, petitioner seeks a writ of *mandamus* "directing respondent John W. Lewis forthwith to take all necessary action as directed by petitioner" in connection with the issuance and sale of bonds as authorized by the Transportation Bond Act.

Since resolution of the various issues in this case requires analysis of specific provisions of the Act in the context of the Act as a whole, we will set forth in some detail the pertinent provisions in question.

The Act provides for the issuance of $900,000,000 of General Obligation Bonds backed by the full faith and credit of the State of Illinois for two specific purposes enumerated in section 2 of the Act. The first is "the specific purpose of promoting and assuring rapid, efficient, and safe highway, air and mass transportation for the inhabitants of the State by providing monies, including the making of grants and loans, to be used for the acquisition, construction, reconstruction, extension and improvement" of the highway, mass transit and aviation facilities and equipment specified in sections 2(a), 2(b)(1) and 2(c) of the Act "and for the acquisition of real property and interests in real property required or expected to be required in connection therewith."

The other specific purpose is stated as follows in section 2(b)(2) and (3) of the Act: "For the purpose of providing immediate relief from existing or impending inability to meet principal and interest payments and thereby aiding in achieving the maximum benefit for the public from the transportation capital improvement program, to provide funds for any payments required to be made for principal of and interest on bonds, certificates,

equipment trust certificates or other evidences of indebtedness issued or guaranteed prior to the passage of this Act by the State or any unit of local government, special transportation district, municipal corporation or other corporation or public authority authorized to provide public transportation within the State or two or more of the foregoing acting jointly, pursuant to any indenture, ordinance, resolution, agreement or contract to obtain and finance transportation facilities"; and to provide funds "for the purpose of reimbursing the General Revenue Fund for monies paid from the General Revenue Fund after passage of this Act" for such purposes. Funds expended for this second purpose are limited to $32,000,000 by section 5.1 of the Act, which also provides that no bond proceeds shall be subject to appropriation for such purpose by the General Assembly after June 30, 1972.

The bonds authorized by the Act are designated "Transportation Bonds, Series A" and "Transportation Bonds, Series B". The Series A Bonds total $600,000,000, and the proceeds of sale are to be used for "the acquisition, construction, reconstruction, extension and improvement of State highways, arterial highways, freeways, roads, structures separating highways and railroads and bridges." (Sec. 2(a).) The proceeds of sale of the Transportation Bonds, Series B, in the aggregate of $300,000,000 are to be used as follows: $200,000,000 for "the acquisition, construction, extension, reconstruction and improvement of mass transportation facilities including rapid transit, rail, bus and other equipment used in connection therewith by the State or any unit of local government, special transportation district, municipal corporation or other corporation or public authority authorized to provide and promote public transportation within the State or two or more of the foregoing acting jointly" (sec. 2(b)(1)), and the remaining $100,000,000 for "the acquisition, construction, extension, reconstruc-

tion and improvement of airport or aviation facilities and any equipment used in connection therewith by the State or any unit of local government, special transportation district, municipal corporation or other corporation or public authority authorized to provide public transportation within the State or two or more of the foregoing acting jointly." Sec. 2(c).

The Act goes on to specify that the bonds are to bear interest at a rate not to exceed 7%, shall mature in not more than 30 years from the date of issue, shall be sold only after specified advertisement for bids by the Secretary of State to the highest and best bidder from time to time as the Governor shall direct for not less than par value with the Governor reserving the right to reject any and all bids, and that the bonds shall be callable as determined by the Governor with the State not to pay a premium of more than 3% of the principal of bonds so called.

The proceeds of sale of the Series A bonds are to be deposited in the State Treasury in a newly created separate fund designated "Transportation Bond, Series A Fund" and the proceeds of the Series B Bonds are to be deposited in a companion fund designated "Transportation Bond, Series B Fund".

Pursuant to section 5 of the Act the proceeds of sale of the bonds are to be used by and under the direction of designated departments of the State of Illinois, "subject to appropriation by the General Assembly, in such amounts and at such times as the respective department deems necessary or desirable" for the purposes of the Act.

Section 7 of the Act sets forth the manner of repayment of the bonds. The Act provides for the creation of two bond retirement funds of the State Treasury, known respectively as "Transportation Bonds, Series A Retirement and Interest Fund" and "Transportation Bonds, Series B Retirement and Interest Fund". The Governor is directed to include an appropriation in each

annual State budget of monies in such amounts as are necessary for the period covered by the budget to pay the principal and interest coming due on the bonds which are outstanding. The Act provides that with respect to the Series A Bonds, "the General Assembly shall annually make appropriations for monies" to pay the principal and interest on the Series A Bonds from the Series A Retirement Fund and "shall direct the transfer from time to time of monies from the Road Fund" to the Series A Retirement Fund sufficient for this purpose, or if there are insufficient funds in the Road Fund for this purpose, then the General Assembly is directed to transfer such monies as are necessary for that purpose from the General Revenue Fund to the Series A Retirement Fund. With respect to Series B Bonds, the General Assembly "shall make appropriations for monies" to pay the principal and interest on the Series B Bonds and "shall direct the transfer from time to time of monies from the General Revenue Fund" to the Series B Retirement Fund sufficient for this purpose.

Section 7 of the Act further provides that if for any reason the General Assembly should fail to make the appropriations for or transfers to the A and B Retirement Funds of amounts sufficient to pay the principal and interest on the bonds when they become due, "this Act shall constitute an irrevocable and continuing appropriation of all amounts necessary for that purpose, and the irrevocable and continuing authority for and direction to the Auditor of Public Accounts, or Comptroller as his successor, and to the Treasurer of the State to make the necessary transfers out of and disbursements from the revenues and funds of the State for that purpose".

Section 9 contains provisions which require the State Treasurer and Auditor of Public Accounts to make timely transfers of monies as mandated by the provisions of section 7 of the Act with the provision that such transfers

are not necessary if the monies in the Series A and B Retirement Funds are sufficient to pay principal and interest due on the outstanding bonds.

The Illinois constitution of 1970 was ratified by the People on December 15, 1970, but did not become generally effective until July 1, 1971. The Transportation Bond Act was enacted by the 77th General Assembly during this interim period. The 'anticipatory nature of the Act is apparent. The preamble to the Act states that it is "An Act in anticipation of the effective date of the Illinois Constitution of 1970 and to implement, in part, Article XIII, Section 7 of the Constitution ***." Section 12 of the Act provides: "This Act having been passed in anticipation of the effective date of the Illinois Constitution of 1970 and to implement, in fact, Article XIII, Section 7 of the Illinois Constitution of 1970, shall go into full force and effect upon July 1, 1971, or upon the date when the Governor signs this Act into law if such signing occurs after July 1, 1971." On July 2, 1971, the Act was approved by the Governor and thereupon became law one day after the Illinois Constitution of 1970 became generally effective.

Respondent's initial contention is that the validity of the Transportation Bond Act must be determined by the constitution of 1870 in effect at the time the Act was passed by the General Assembly and not by the constitution of 1970 in effect at the time the Act became law. The underlying issue is whether the legislature has power to enact legislation to anticipate and be tested by an already ratified but not yet effective constitution even though the legislation possibly may not have been valid if tested by the constitution in effect at the time of its passage. This is a question of first impression in Illinois for the practical reason that the 1848 and 1870 constitutions became effective very shortly after ratification by the People. However, the United States Supreme Court has upheld legislation in anticipation of a constitutional amendment

*(Druggan v. Anderson (1926), 269 U.S. 36, 70 L.Ed. 151, 46 S.Ct. 14)* as have most State courts which have considered the question. *(Gaylord v. Beckett (1966), 378 Mich. 273, 144 N.W.2d 460; In re Opinions of the Justices (1933), 227 Ala. 291, 149 So. 776; Alabam's Freight Co. v. Hunt (1926), 29 Ariz. 419, 242 Pac. 658; State v. Herker (1923), 109 Ore. 520, 221 Pac. 808; Neisel v. Moran (1920), 80 Fla. 98, 85 So. 346.)* The authority to the contrary involves distinguishable circumstances where there was pre-ratification anticipatory legislation; *i.e.*, legislation passed in anticipation of the ratification of a particular constitutional provision. *In re Opinion of the Justices (1941), 137 Me. 350, 19 A.2d 53; In re Opinion of the Justices (1934), 132 Me. 519, 174 A. 845; Etchison Drilling Co. v. Flournoy (1912) 131 La. 442, 59 So. 867.*

We read the cases above referred to as standing for the general proposition that the enactment of legislation in anticipation of an adopted but not yet effective constitutional provision is within the plenary lawmaking power of the legislature unless anticipatory legislation, as such, is prohibited by constitutional provisions. Applying that general principle to the case before us, we think it is clear that anticipatory legislation such as the Transportation Bond Act is not contrary to the letter or spirit of either the 1870 or 1970 constitutions. Indeed, it could reasonably be concluded that the framers of the 1970 constitution intended to afford the 77th General Assembly an opportunity to enact anticipatory and implementing legislation by providing a six and one-half month period between the date of ratification of the new constitution and its effective date. Practical considerations also indicate the desirability of anticipatory and implementing legislation in advance of the effective date of a new constitution. Such legislation is necessary in some cases to supplement new constitutional provisions which are not self-executing and in other cases to insure an orderly and

efficient transition from the old to the new constitution and a continuity in the operation of government.

With respect to the Act here in question the legislature apparently determined that there was a present need for aid and assistance to public transportation in the State. Accordingly, the General Assembly enacted the Transportation Bond Act to anticipate a particular enabling provision of the 1970 constitution which was certain to become effective on July 1, 1971. There is no justification in law or reason to require the General Assembly to wait until its next session to pass this legislation. The possibility that the Act may not have been valid under the 1870 constitution is of no consequence, since the Act never became effective, and indeed never became a law, under that constitution. We conclude that the legislature had power to enact the Transportation Bond Act in anticipation of the effectiveness of the 1970 constitution and that the validity of the Act must be determined thereunder.

Respondent next contends that the Transportation Bond Act does not set forth the "specific purposes" of the law as required by section 9(b) of the constitution, which provides that "any law providing for the incurring or guaranteeing of debts shall set forth the specific purposes ***."

We believe that the "specific purposes" requirement of article IX, section 9(b), was intended to require that laws such as the Transportation Bond Act which incur debt through the issuance of bonds must define in reasonable detail how the funds from the sale of bonds are to be expended and the objectives to be accomplished. As we have indicated above, the Transportation Bond Act states that it has two specific purposes. The first is "promoting and insuring rapid, efficient and safe highway, air and mass transportation for the inhabitants of the State" by providing funds, grants and loans to be used for the "acquisition, construction, reconstruction, extension

and improvement" of highway transportation, mass transportation, and aviation facilities and for the acquisition of real property and interests in real property which are required in connection therewith. Sub-section 2(a) defines how the funds are to be expended for highway transportation purposes; sub-section 2(b) describes how the funds are to be expended for mass transportation purposes; and sub-section 2(c) specifies how the funds are to be spent for aviation purposes.

With respect to this portion of the Act, it is our opinion that the Act sets forth with reasonable detail how the funds are to be expended and the objectives to be accomplished. A project by project itemization certainly could not be expected in a comprehensive act of this type. *(Mitchell v. Lowden (1919), 288 Ill. 327; Lund v. Horner (1941), 375 Ill. 303.)* We believe that sufficient guidelines are established which will permit the respective governmental departments to plan future use of the funds for particular projects and to afford the legislature adequate standards to determine whether funds should be appropriated for such intended uses.

The principal thrust of respondent's argument that the Act does not meet the "specific purposes" requirement of the constitution relates to the second purpose set forth in section 2(b)(2) and (3) concerning debt relief for certain entities. Closely related to this contention is his assertion that this portion of the Act is invalid because it appropriates public funds for nonpublic purposes in contravention of article VIII, section 1(a), of the constitution which provides that "public funds, property or credit shall be used only for public purposes." In particular he contends that section 2(b)(2) does not specify the nature of the pre-existing indebtedness to be retired by the proceeds of the sale of Transportation Bonds with the result that monies may be allocated under the Act to a broad number of entities for payment of indebtednesses which may have

been incurred for purposes unrelated to public transportation, thus constituting a diversion of public monies for nonpublic purposes.

In construing the Transportation Bond Act as a whole and section 2(b)(2) thereof in particular, it must be kept in mind that the Act was enacted to implement section 7 of article XIII of the constitution which provides:

> "Public transportation is an essential public purpose for which public funds may be expended. The General Assembly by law may provide for, aid, and assist public transportation, including the granting of public funds or credit to any corporation or public authority authorized to provide public transportation within the State."

In our opinion section 2(b)(2) contains significant limitations in addition to those imposed by section 5.1 limiting expenditures for these purposes to $32,000,000 and providing that no bond proceeds may be appropriated for debt relief subsequent to July 30, 1972. The debt relief may be provided only in cases of "existing or impending inability to meet principal and interest payments" and only for the purpose of "achieving the maximum benefit from the transportation capital improvement program"; the debt must have been incurred only by entities "authorized to provide public transportation within the State"; and the purpose of the debt must have been "to obtain and finance transportation facilities." The term "transportation facilities", in section 2(b)(2), when read in the context of the Act, must refer to those facilities which were acquired for public transportation purposes. In view of the stated purposes of the Act and the constitutional provision which it was intended to implement and anticipate, we believe that this section clearly contemplates the expenditure of funds for debt relief only where that debt was incurred for the constitutionally permissible purpose of aiding and assisting public transportation. We again emphasize the further significant safeguard applicable to all expenditures of bond proceeds under the Act: namely,

that no funds may be expended unless first appropriated by the General Assembly, thus affording the legislature an opportunity to scrutinize all proposed expenditures to insure that they will be made only for the public transportation purposes contemplated by the Act.

We conclude, therefore, that section 2(b)(2) sets forth with sufficient definiteness the "specific purposes" as required by section 9(b) of article IX of the constitution and does not authorize an expenditure of public funds for nonpublic purposes in contravention of section 1(a) of article VIII of the constitution.

Respondent further contends that the Transportation Bond Act is not confined to one subject, and therefore violates section 8(d) of article IV which provides in pertinent part that "bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." This provision is basically identical to that portion of section 13 of article IV of the 1870 constitution which provided: "No act hereafter passed shall embrace more than one subject ***." In *People ex rel. Gutknecht v. Chicago (1953), 414 Ill. 600,* we stated: "The requirement of singleness of subject has been frequently construed, and the applicable principles are settled. The term 'subject' is comprehensive in its scope and may be as broad as the legislature chooses, so long as the matters included have a natural or logical connection. An act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of legislative purpose. Nor is the constitutional provision a limitation on the comprehensiveness of the subject; rather, it prohibits the inclusion of 'discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other.' *(People ex rel. City of Chicago v. Board of County Comrs. of Cook County, 355 Ill. 244.)" 414 Ill. 600, 607-608.*

The single subject matter of the Transportation Bond

Act is the aiding and assisting of public transportation in the State of Illinois by the issuance and sale of transportation bonds. In our opinion, all provisions of the Act are germane to this single subject, and we find no violation of the "single subject" requirement of section 8(d) of article IV of the constitution.

Respondent next contends that the Transportation Bond Act does not meet the requirement of section 9(b) of article IX of the constitution which provides in part that "any law providing for the incurring or guaranteeing of debt shall set forth *** the manner of repayment." In particular he argues that the Act does not adequately describe the specific means of raising the State revenues necessary to repay the bonds. Examination of sections 7, 8, 9 and 10 of the Act reveals various and detailed provisions relating to the repayment process and the various funds within the State Treasury from which the monies are to come. The transportation bonds are general obligations of the State of Illinois with the general revenues of the State ultimately pledged to insure their payment. We do not concur with respondent's suggestion that the constitutional provision in question requires that the Act must prescribe how State revenues are to be raised to repay the bonds in the future. As we view the Act, this requirement is concerned with such repayment essentials as the interest rates, maturity dates, call options, and similar matters. In our opinion the Act sufficiently prescribes the "manner of repayment" within the intent of section 9(b) of article IX.

Respondent next directs our attention to the second paragraph of section 7 of the Act which provides that if the General Assembly should fail to make appropriations for payment of the bonds as required by the Act, then "this Act shall constitute an irrevocable and continuing appropriation of all amounts necessary for that purpose ***." Respondent argues: (1) That this provision violates that portion of section 8(d) of article IV of the constitu-

tion which provides that "appropriation bills shall be limited to the subject of appropriations"; and (2) that it constitutes a "continuing appropriation" in violation of section 2(b) of article VIII which provides in part that "appropriations for a fiscal year shall not exceed funds estimated by the General Assembly to be available during that year."

With respect to resondent's first contention, we think it clear that the statutory provision in question is an integral part of the "manner of repayment" provisions of the Act which are required by section 9(b) of article IX of the constitution. To the extent that there is any conflict in this case between this specific constitutional provision and the more general provision of section 8(d) of article IV concerning appropriation bills, we believe that the more specific provision of section 9(b) of article IX should take precedence. As this court stated in *People ex rel. Nauert v. Smith, 327 Ill. 11 (1927),* "When general and special provisions of a constitution are in conflict the special provisions should be given effect to the extent of their scope, leaving the general provisions to control in cases where the special provisions do not apply. The particular intent incompatible with a general intent will be treated as an exception." (327 Ill. 11, at 20; see also *Behnke v. New Jersey Highway Authority (1953), 13 N.J. 14, 97 A.2d 647.)* Accordingly, we conclude that the "continuing appropriations" provision in the second paragraph of section 7 of the Act does not violate section 8(d) of article IV of the constitution as contended by respondent.

Unlike the 1870 constitution which specifically prohibited appropriations beyond a specified period *(Bowes v. Howlett (1962), 24 Ill.2d 545; People ex rel. Millner v. Russell (1924), 311 Ill. 96),* the 1970 constitution contains no express provision limiting the length of time for which legislative appropriations may be made. Respondent contends, however, that continuing appropriations are implicitly prohibited by section 2(b) of article

VIII of the new constitution which provides that appropriations for a fiscal year must not exceed the funds estimated by the General Assembly to be available during that year to satisfy the appropriations. He suggests that a continuing appropriation is inconsistent with this provision in that the legislature cannot possibly estimate the "funds available" for future years to which the appropriation relates.

Section 2(a) of article VIII of the constitution provides, among other things, that the Governor shall prepare and submit to the General Assembly a balanced State budget for each fiscal year; *i.e.,* a budget with proposed expenditures not exceeding estimated available funds. Section 2(b) of article VIII, relied on by respondent, complements these balanced budget provisions by providing that the legislature must limit its annual appropriations each fiscal year so as not to "exceed funds estimated by the General Assembly to be available during that year." We do not read these provisions as prohibiting appropriations which continue beyond one fiscal year.

The Transportation Bonds issued under the Transportation Bond Act are general obligations of the State of Illinois, and provision must obviously be made for their payment out of State funds. Consistent with the budgetary requirements of section 2(a) of article VIII of the constitution, section 7 of the Act directs the Governor to make provision in each annual State budget for payment of principal and interest coming due on the outstanding bonds. The General Assembly, in turn, is directed by that section to appropriate funds each fiscal year to pay these amounts. Only if the General Assembly should, for some reason, fail to make such appropriations for any given fiscal year does the continuing appropriation provision in question become operative to do what the General Assembly was supposed to do. We think it is clear that the requirements of section 2(b) of article VIII would be complied with so long as the total appropriations for

any fiscal year, including the amounts appropriated to pay principal and interest on outstanding Transportation Bonds, do not exceed the estimated available funds. We conclude, therefore, that the continuing appropriation provision in the second paragraph of section 7 of the Act is not inconsistent with or prohibited by section 2(b) of article VIII of the constitution.

Respondent also argues that the Act is invalid in that it is vague, indefinite and uncertain and that it provides for an unconstitutional delegation of legislative authority to the Governor by providing that he is to determine various details with respect to sale of the bonds. We have considered respondent's contentions in this regard and find them to be without merit.

We concur with petitioner's suggestion that *mandamus* is an appropriate remedy under the facts presented to us, and we therefore direct that a writ of *mandamus* issue to respondent directing him to comply with the provisions of the Transportation Bond Act, and perform the duties therein specified to be performed by him.

*Writ awarded.*