Docket No. 85366–Agenda 6–March 1999.

ARANGOLD CORPORATION, d/b/a Arangold Cigar Company, Appellee, v. KENNETH E. ZEHNDER, Director of Revenue, 
et 

 al
., Appellants.

Opinion filed July 1, 1999.

JUSTICE BILANDIC delivered the opinion of the court:

The central issue in this appeal is whether the General Assembly violated the single subject requirement of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)) when it enacted Public Act 89–21 (Pub. Act 89–21, eff. June 6, 1995; July 1, 1995; January 1, 1996). Public Act 89–21 is the Eighty-Ninth General Assembly’s state budget implementation act for fiscal year 1996. The plaintiff, Arangold Corporation, doing business as Arangold Cigar Company, brought this action in the circuit court of Cook County to enjoin the enforcement of a tobacco tax that was enacted as part of Public Act 89–21, and to recover those monies that it had paid under protest toward the tax. The plaintiff sought a summary judgment that Public Act 89–21 is unconstitutional because the General Assembly violated the single subject rule in enacting it. The circuit court agreed and granted summary judgment for the plaintiff. The defendants, Director of Revenue Kenneth E. Zehnder, State Treasurer Judy Baar Topinka, and the Department of Revenue, appeal directly to this court (134 Ill. 2d R. 302(a)). For the reasons that follow, we hold that Public Act 89–21 does not violate the single subject requirement. We therefore reverse the circuit court’s grant of summary judgment to the plaintiff.

BACKGROUND

Proceedings and Decision of the Circuit Court

The plaintiff is a wholesale tobacco distributor. It brought this action as a challenge to the Tobacco Products Tax Act of 1995 (Tobacco Tax Act) (35 ILCS 143/10–1 
et seq.
 (West 1996)), which was enacted as part of Public Act 89–21. The plaintiff originally argued that the Tobacco Tax Act violated the due process and equal protection clauses of the United States and Illinois Constitutions, and also violated the uniformity requirement and the special legislation prohibition of the Illinois Constitution. The plaintiff moved for summary judgment on those four counts in July of 1996. The circuit court denied that motion on July 3, 1997.

Meanwhile, on June 27, 1997, the plaintiff obtained leave to amend its complaint to add a fifth count. The plaintiff then alleged that Public Act 89–21 is invalid because it does not comply with the single subject requirement of the Illinois Constitution. The plaintiff moved for summary judgment on this claim. The circuit court granted the plaintiff’s motion and held Public Act 89–21 unconstitutional in its entirety because it violates the single subject rule.

In rendering its decision, the court conceded the possibility that the provisions of Public Act 89–21 are “related in some fashion” to “balancing the state budget.” Nonetheless, the court stated, “the single subject rule requires more, namely, that the provisions be related to each other.” The court concluded that the provisions within Public Act 89–21 are not related to each other. As an example, the court discussed the Tobacco Tax Act, which, the court found, stands “alone and apart from every other provision,” “unrelated to the first amendment in the Act, *** unrelated to the last amendment in the Act, *** and *** unrelated to most if not all of the numerous provisions in between.”

Lastly, the court rejected the defendants’ argument that its decision invalidating Public Act 89–21 be given prospective effect only. The court stated that its decision was not based on a new principle of law. Although the court admitted that “the wide-

ranging effects of declaring Public Act 89–21 to be unconstitutional are indeed chilling and contrary to the critical public interest in the orderly administration of government,” it concluded that this factor alone did not warrant limiting the effect of its decision.

Based on its conclusion that Public Act 89–21 is invalid in its entirety for violating the single subject rule, the court entered a final judgment for the plaintiff. That judgment was appealed directly to this court pursuant to Supreme Court Rule 302(a), which provides for direct appeal from final judgments of the circuit courts in cases in which an Illinois statute has been held invalid. See 134 Ill. 2d R. 302(a).

Enactment of Public Act 89–21

When Public Act 89–21 originated in the Senate as Senate Bill 465, its short title was “FY1996 Budget Implementation Act” and its “purpose and subject” were to “make the changes in State programs that are necessary to implement the Governor’s FY1996 budget recommendations.” The bill proceeded through the legislative process. A joint conference committee was appointed after the Senate and the House failed to agree on the bill’s provisions. After conferring, the committee recommended changing the bill’s title to “An Act concerning State services, amending named Acts,” and also recommended adopting a new and lengthy set of substantive provisions. V 1995 Ill. S.J. 4248-

368; VI 1995 Ill. H.J. 6279-398.

Both the Senate and the House debated the report of the conference committee. In the Senate, the sponsor, Senator Maitland, introduced the committee’s report as “the budget implementation language for the FY’96 budget.” 89th Ill. Gen. Assem., Senate Proceedings, May 26, 1995, at 36 (comments of Senator Maitland). Senator Maitland described the major aspects of the report. Other senators followed with criticism of the report. The House sponsor, Representative Ryder, introduced the committee’s report as “the Budget Implementation Act for the fiscal year 1996.” 89th Ill. Gen. Assem., House Proceedings, May 26, 1995, at 102 (comments of Representative Ryder). Representative Ryder generally described the report as containing “the substantive language necessary to implement the budget that we are proposing,” and he outlined the major aspects of the report. Debate ensued in the House in which members criticized and expressed support for the report.

Following the debates, both the Senate and the House voted to adopt the report of the conference committee. I Final Legislative Synopsis & Digest of the 1995 Session of the 89th Ill. Gen. Assem., at 341 (Legis. Synopsis). On June 6, 1995, the Governor approved the bill as Public Act 89–21. Legis. Synopsis at 341; 1995 Ill. Laws 673-807.

The actual state budget was debated and adopted by the legislature on the same day as the budget implementation bill discussed above. The Governor approved the budget bill as Public Act 89–22, also on June 6, 1995. Legis. Synopsis at 567-68; 1995 Ill. Laws 807-1216.

The General Assembly has enacted a state budget implementation bill or bills every year since 1991.

Contents of Public Act 89–21

To implement the budget, Public Act 89–21 amended 21 different acts, some extensively and others in minor respects. The amended acts include the State Employees Group Insurance Act of 1971 (5 ILCS 375/1 
et seq
. (West 1996)), the Illinois Pension Code (40 ILCS 5/1–101 
et seq
. (West 1996)), the Illinois Act on the Aging (20 ILCS 105/1 
et seq
. (West 1996)), the Civil Administrative Code of Illinois (20 ILCS 405/64 
et seq
. (West 1996)), the Children and Family Services Act (20 ILCS 505/1 
et seq
. (West 1996)), the Disabled Persons Rehabilitation Act (20 ILCS 2405/0.01 
et seq
. (West 1996)), the State Finance Act (30 ILCS 105/1 
et seq
. (West 1996)), the State Prompt Payment Act (30 ILCS 540/0.01 
et seq
. (West 1996)), the Illinois Income Tax Act (35 ILCS 5/101 
et seq
. (West 1996)), the State Mandates Act (30 ILCS 805/1 
et seq
. (West 1996)), the School Code (105 ILCS 5/1–1 
et seq
. (West 1996)), the Nursing Home Care Act (210 ILCS 45/1–101 
et seq
. (West 1996)), the Child Care Act of 1969 (225 ILCS 10/1 
et seq
. (West 1996)), the Riverboat Gambling Act (230 ILCS 10/1 
et seq
. (West 1996)), the Illinois Administrative Procedure Act (5 ILCS 100/1–1 
et seq
. (West 1996)), the Illinois Public Aid Code (305 ILCS 5/1–1 
et seq
. (West 1996)), the Abused and Neglected Child Reporting Act (325 ILCS 5/1 
et seq
. (West 1996)), the Juvenile Court Act of 1987 (705 ILCS 405/1–1 
et seq
. (West 1996)), the Adoption Act (750 ILCS 50/0.01 
et seq
. (West 1996)), the Probate Act of 1975 (755 ILCS 5/1–1 
et seq
. (West 1996)), and the Unemployment Insurance Act (820 ILCS 405/100 
et seq
. (West 1996)).

Public Act 89–21 also repealed the Tobacco Products Tax Act (1995 Ill. Laws 731) and replaced it with the Tobacco Products Tax Act of 1995 (see 1995 Ill. Laws 726). The new Tobacco Products Tax Act of 1995 changed language in the act and imposes a tax at a different rate than its predecessor. Compare 35 ILCS 143/10–1 
et seq.
 (West 1996) with 35 ILCS 142/1 
et seq.
 (West 1994) (repealed); see also 89th Ill. Gen. Assem., House Proceedings, May 26, 1995, at 102, 114. This new Tobacco Tax Act prompted the instant challenge to Public Act 89–21’s constitutionality.

A brief description of the substance of the foregoing amendments follows. The Illinois Public Aid Code was amended to abolish the interim assistance program for persons awaiting a determination of their eligibility for federal supplemental security income payments. 1995 Ill. Laws 732-33, 762. The Public Aid Code’s provisions relating to Medicaid reimbursements were amended by freezing the reimbursement rates (1995 Ill. Laws 744, 775-77), by allowing the Department of Public Aid to determine criteria for adjustable payments to hospitals (1995 Ill. Laws 743, 779), and by changing the payment of assessments by hospitals and developmentally disabled care providers (1995 Ill. Laws 758-59).

The Children and Family Services Act was amended to postpone the requirement that the Department of Children and Family Services (DCFS) provide family preservation services (1995 Ill. Laws 696), to bar DCFS from assuming responsibility for any minor over the age of 13 who is charged with a criminal offense (1995 Ill. Laws 697), to permit DCFS to set up certain savings accounts (1995 Ill. Laws 699), and to permit DCFS to place a child with a relative, as defined therein (1995 Ill. Laws 701-02). To account for these changes to the Children and Family Services Act, Public Act 89–21 amended several other acts as well. For example, the Juvenile Court Act of 1987 was amended primarily to correspond with the limits placed on DCFS’s responsibility for delinquent minors (1995 Ill. Laws 785, 789, 797) and the expansion of DCFS’s ability to place children with relatives (1995 Ill. Laws 782-83). The Abused and Neglected Child Reporting Act was amended to reflect the postponement of family preservation services. 1995 Ill. Laws 781. The Adoption Act was amended to exempt children placed with relatives from the Child Care Act of 1969 (1995 Ill. Laws 800), and the Child Care Act was changed to include relatives licensed as foster parents in the definition of “child care facility” and to permit relatives who receive children for placement to operate a “foster family home” (1995 Ill. Laws 721-25).

Likewise, changes in other acts appear to have corresponded to the changes in the Medicaid reimbursement scheme in the Public Aid Code. The Tobacco Tax Act was enacted to provide funds for the Long-Term Care Provider Fund. 1995 Ill. Laws 728. The State Prompt Payment Act was amended to exempt certain state-paid medical assistance from the definition of “goods and services furnished to the State” (1995 Ill. Laws 709) and to delete the approval dates for payments to managed health care and long-term care entities under the Public Aid Code (1995 Ill. Laws 710).

Also related to the changes to the Public Aid Code were amendments to the Illinois Act on the Aging, the Disabled Persons Rehabilitation Act, the Nursing Home Care Act, and the Probate Act of 1975. These amendments required screening of persons seeking admission to nursing homes to determine their need for services, or assigned responsibility for screening. 1995 Ill. Laws 687, 705-06, 719. These amendments also gave the state the right to seek reimbursement from a person’s estate for certain public assistance provided during the person’s life. 1995 Ill. Laws 685, 706, 802.

Public Act 89–21 made further amendments. It amended the State Employees Group Insurance Act of 1971 to provide the Department of Central Management Services with information about the Teachers Retirement System (TRS) program, changed the definition of “TRS dependent beneficiary,” and also made changes relating to eligibility, premiums, interest, contributions, and payment of administrative costs. 1995 Ill. Laws 673-82. The Civil Administrative Code was altered to require certain state automobile liability claims to be paid from the Road Fund. 1995 Ill. Laws 688. The State Finance Act was amended to appoint the Bureau of the Budget as the state representative to the United States Department of the Treasury for purposes of implementing the federal Cash Management Improvement Act of 1990. 1995 Ill. Laws 707-08.

In addition, Public Act 89–21 amended the Illinois Income Tax Act to permit the Illinois Board of Education to obtain information to determine income taxes paid from taxpayers in specific school districts. 1995 Ill. Laws 710. The Illinois Pension Code was changed to increase minimum retirement annuities and benefits payable. 1995 Ill. Laws 712-13. The School Code was amended to establish a school technology program and to authorize the Illinois Board of Education to provide resources, including matching grants, for the program. 1995 Ill. Laws 713. The Riverboat Gambling Act was changed to require the periodic transfer of funds into the Education Assistance Fund. 1995 Ill. Laws 726. The Unemployment Insurance Act’s requirements for eligibility were amended to clarify that department’s authority, as a condition of federal funding. 1995 Ill. Laws 806. Finally, the Illinois Administrative Procedure Act was amended to permit agencies to use emergency rules to “implement the changes made by this amendatory Act of 1995 or other budget reduction initiatives for the Fiscal Year 1996.” 1995 Ill. Laws 731.

ANALYSIS

I

This court conducts 
de novo
 review of a circuit court’s holding that a statute is unconstitutional. 
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998). All statutes carry a strong presumption of constitutionality. 
Russell
, 183 Ill. 2d at 441. The party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation. 
Russell
, 183 Ill. 2d at 441. In this case, the plaintiff bears this burden.

The plaintiff contends that Public Act 89–21, which includes the Tobacco Tax Act, was enacted by the General Assembly in violation of the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)). According to the plaintiff, the General Assembly violated the single subject rule by including within the Act “a variety of discordant provisions covering a multitude of subjects.” The plaintiff correctly notes that Public Act 89–21 amended more than 20 different acts, addressing a number of matters. Given this, the plaintiff argues that the various provisions within the Act lack a relation to the subject of implementation of the state budget for the 1996 fiscal year. In addition, the plaintiff contends that the topic of the “state budget” is so overly broad that it cannot be considered to be a single subject for purposes of the single subject rule.

The single subject rule provides:

“Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject.” Ill. Const. 1970, art. IV, §8(d).

This rule prohibits a legislative enactment from clearly embracing more than one subject on its face. 
People v. Dunigan
, 165 Ill. 2d 235, 254-55 (1995).

The principles applied in analyzing a single subject challenge have long been established in Illinois jurisprudence. An enactment satisfies the single subject requirement so long as the matters included within it have a natural and logical connection. 
E.g.
,
 People v. Reedy
, 186 Ill. 2d 1, 9 (1999); 
Johnson v. Edgar
, 176 Ill. 2d 499, 515 (1997); 
Cutinello v. Whitley
, 161 Ill. 2d 409, 423-24 (1994); 
People ex rel. Ogilvie v. Lewis
, 49 Ill. 2d 476, 487 (1971). The term “subject” as set forth in the constitution is liberally construed in favor of upholding the legislation. 
Johnson
, 176 Ill. 2d at 515.

“ ‘The term “subject” is comprehensive in its scope and may be as broad as the legislature chooses, so long as the matters included have a natural or logical connection. An act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of legislative purpose. Nor is the constitutional provision a limitation on the comprehensiveness of the subject; rather, it prohibits the inclusion of “discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other.” [Citation.]’ ”
 Ogilvie
, 49 Ill. 2d at 487, quoting 
People ex rel. Gutknecht v. City of Chicago
, 414 Ill. 600, 607-08 (1953), quoting 
People ex rel. City of Chicago v. Board of County Commissioners
, 355 Ill. 244, 247 (1934).

The number of provisions in an enactment is not determinative of its compliance with the single subject rule. 
Cutinello
, 161 Ill. 2d at 423. Nor is the act’s length. 
Johnson
, 176 Ill. 2d at 516. That the enactment happens to amend a number of acts already in effect is also not determinative. 
Geja’s Café v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 258 (1992). What is dispositive is whether the contents included within the enactment have a natural and logical connection to a single subject.

Applying the above principles to this case, we hold that Public Act 89–21 embraces but a single subject: 
i.e.
, implementation of the state budget for the 1996 fiscal year. We note that the original bill introduced in the Senate, the subsequent conference committee report, and the final enactment of Public Act 89–21 all pertained to this subject. Although Public Act 89–21 has a number of provisions and amended a number of acts already then in effect, every provision within the Act is germane to this single subject. Our review of the Act’s provisions persuades us that the entire Act is directed toward changing the substantive law in order to implement the state’s budget for the 1996 fiscal year. The legislature made these changes to ensure that expenditures in a program did not exceed appropriations for that program for the fiscal year. Therefore, all matters included within Public Act 89–21 have a natural and logical connection to implementation of the state’s budget for the 1996 fiscal year. The Act thus comports with the single subject rule.

The plaintiff nonetheless argues that the subject of the “state budget” is too broad to satisfy the single subject rule. On two occasions, this court has rejected the use of a sweeping and vague category to unite unrelated measures in order to satisfy the single subject requirement of our state constitution. First, in 
Johnson v. Edgar
, 176 Ill. 2d 499, 517 (1997), we rejected the defendants’ attempt to broadly unite under “public safety” the diverse subjects of, 
inter alia
, child sex offenders, employer eavesdropping, and environmental impact fees imposed on the sale of fuel. Likewise, in 
People v. Reedy
, 186 Ill. 2d 1, 12 (1999), we rejected the State’s attempt to broadly characterize under “governmental matters” the two entirely different subjects of the criminal justice system and hospital liens. In both cases, we reasoned that, if we were to conclude that the obviously discordant provisions in those acts were related because of some tortured connection to such a broad and vague category, then we would essentially be rendering the single subject requirement meaningless. See 
Reedy
, 186 Ill. 2d at 12; 
Johnson
, 176 Ill. 2d at 517-18.

The danger discussed in 
Johnson 
and 
Reedy 
is not present here. In enacting Public Act 89–21, the General Assembly was not attempting to unite obviously discordant provisions under some broad and vague category. To the contrary, the legislature’s expressed purpose for Public Act 89–21 was to implement the state’s budget for the 1996 fiscal year. The legislature therefore included within that enactment all the means reasonably necessary to accomplish its purpose. This is entirely permissible under the single subject rule. As set forth above, “ ‘An act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of legislative purpose.’ ”
 Ogilvie
, 49 Ill. 2d at 487, quoting 
Gutknecht
, 414 Ill. at 607-08. Because all the provisions in Public Act 89–21 have a natural and logical connection to the subject of implementation of the state’s budget for the 1996 fiscal year, there is no single subject violation. That is all that the single subject rule requires.

The plaintiff, however, urges us to accept the reasoning of the circuit court that “the single subject rule requires more, namely, that the provisions be related to each other.” As earlier noted, the circuit court struck down Public Act 89–21 based on the court’s finding that its provisions are not related to each other. The court discussed the Tobacco Tax Act within Public Act 89–21 as an example. According to the court, Public Act 89–21 violates the single subject requirement because the Tobacco Tax Act therein stands “alone and apart from every other provision,” “unrelated to the first amendment in the Act, *** unrelated to the last amendment in the Act, *** and *** unrelated to most if not all of the numerous provisions in between.”

We reject the circuit court’s analysis. This court’s precedent clearly establishes that the proper test for determining a single subject violation is whether the matters included within the enactment have a natural and logical connection 
to a single subject
. For example, in 
Reedy
, 186 Ill. 2d 1, we invalidated an enactment because the diverse subjects of the criminal justice system and hospital liens had no natural and logical connection to a single subject. Likewise, in 
Johnson
, 176 Ill. 2d 499, we invalidated an enactment because the diverse subjects of child sex offenders, employer eavesdropping, and environmental impact fees had no natural and logical connection to a single subject. In many other cases, this court has upheld an enactment because its provisions had a natural and logical connection to a single subject. For example, in 
People v. Dunigan
, 165 Ill. 2d 235, 254-56 (1995), we upheld an enactment with provisions pertaining to feticide, habitual criminals, and residential picketing, because all those matters had a natural and logical connection to the subject of the criminal law. In 
Cutinello v. Whitley
, 161 Ill. 2d 409, 423-24 (1994), we upheld an enactment with provisions involving state and county motor fuel taxes, regulation of the Department of Transportation, funding for the Regional Transportation Authority, and the development of public transportation, because all those matters had a natural and logical connection to the subject of transportation. Similarly, in 
Geja’s Café v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 256-58 (1992), we upheld an enactment that included, 
inter alia
, provisions requiring Lake Shore Drive in Chicago to be rerouted around McCormick Place and requiring excess revenues obtained by the Sports Facilities Authority to go to the Metropolitan Pier and Exposition Authority, because all matters included within the enactment had a natural and logical connection to the subject of expanding McCormick Place facilities. See also 
Ogilvie
, 49 Ill. 2d 476 (upholding an enactment where all its provisions had a natural and logical connection to the subject of aiding public transportation through the issuance and sale of transportation bonds); 
Stein v. Howlett
, 52 Ill. 2d 570 (1972) (upholding an enactment where all its provisions had a natural and logical connection to the subject of ethics). As the preceding case law demonstrates, this court has continually adhered to the natural and logical connection test. This court has never held that the single subject rule imposes a second and additional requirement that the provisions within an enactment be related to each other. We see no reason to depart from this court’s long and consistent line of precedent interpreting the single subject requirement of our state constitution.

In sum, we conclude that Public Act 89–21 embraces the single subject of implementation of the state budget for the 1996 fiscal year. We therefore reverse the circuit court’s award of summary judgment to the plaintiff.

II

The plaintiff next requests that we consider its arguments that the Tobacco Tax Act violates the due process clause and the uniformity requirement of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2; art. IX, §2). We decline to do so.

In the circuit court, the plaintiff initially moved for summary judgment on its claims that the Tobacco Tax Act offends, 
inter alia
, the due process and uniformity provisions of the Illinois Constitution. The court denied that motion. The plaintiff later sought summary judgment on its separate claim that Public Act 89–21, which includes the Tobacco Tax Act, is unconstitutional in its entirety under the single subject rule. The court granted the plaintiff summary judgment on this ground. As a result, the court did not need to address the plaintiff’s due process and uniformity attacks on the Tobacco Tax Act.

The plaintiff now seeks to assert before this court its arguments that the Tobacco Tax Act violates due process and uniformity principles. The circuit court’s last action on these claims was to deny the plaintiff’s motion for summary judgment. The plaintiff concedes that, standing alone, the denial of a summary judgment motion is generally not appealable. Nevertheless, the plaintiff contends that we should review the denial of its summary judgment motion in this appeal.

Ordinarily, the denial of a summary judgment motion is not appealable standing alone. See generally Annotation, 
Reviewability of Order Denying Motion for Summary Judgment
, 15 A.L.R.3d 899, §3(a) (1967 & 1998 Supp.) (collecting numerous Illinois cases in accord with this principle); 4 R. Michael, Illinois Practice §38.7, at 240 (1989) (discussing Illinois law). This is because a final judgment or decision is generally a prerequisite to appellate jurisdiction (
Niccum v. Botti, Marinaccio, Desalvo & Tameling, Ltd.
, 182 Ill. 2d 6, 7 (1998); see 
Flores v. Dugan
, 91 Ill. 2d 108, 112 (1982)), and an order denying summary judgment is interlocutory. Thus, the denial of the plaintiff’s summary judgment motion was not appealable by itself. Nonetheless, this determination does not resolve the issue before us. The question here is whether the denial of that summary judgment motion may be reviewed on appeal 
in conjunction with a final judgment
. For all the reasons set forth below, we conclude that this appeal does not present a situation in which this court may properly review the denial of a summary judgment motion.

The plaintiff cites 
DePluzer v. Village of Winnetka
, 265 Ill. App. 3d 1061 (1994), in support of its argument that we should review the denial of its summary judgment motion. The defendants counter that the denial of this motion is not reviewable under 
DePluzer
. According to the defendants, even assuming that 
DePluzer
 is “good law,” it does not support the plaintiff’s argument. We agree with the defendants that 
DePluzer
 is inapposite. The 
DePluzer
 court reviewed the denial of a summary judgment motion; however, it did so because it believed that the claim for which summary judgment had been denied had itself become final and appealable through a later voluntary dismissal. See 
DePluzer
, 265 Ill. App. 3d at 1065. Here, in contrast, the parties do not dispute that the claims for which summary judgment was denied remain interlocutory in nature. Therefore, in this appeal, unlike in 
DePluzer
, no independent basis exists on which to review the denial of summary judgment.

We recognize that, in 
Colvin v. Hobart Brothers
, 156 Ill. 2d 166 (1993), and 
Duldulao v. Saint Mary of Nazareth Hospital Center
, 115 Ill. 2d 482 (1987), this court found it proper to review the denial of a summary judgment motion in conjunction with our review of a final judgment. Both 
Colvin
 and 
Duldulao 
involved opposing motions for summary judgment
 on the same claim
, where one party’s motion was granted and the other party’s motion was denied. An appellate court may properly review the denial of a summary judgment motion in that situation. 
Colvin
, 156 Ill. 2d at 170; 
Duldulao
, 115 Ill. 2d at 494; see generally 15 A.L.R.3d 899, §9(b) (collecting cases). When the lower court grants one party’s summary judgment motion as to all issues and denies the other party’s summary judgment motion as to the same issues, the resulting order is final and appealable because it entirely disposes of the litigation. See 
Colvin
, 156 Ill. 2d at 170. The present case does not involve opposing motions for summary judgment on the same claim or issues. Rather, the instant plaintiff is requesting us to review the denial of summary judgment in conjunction with our review of a final judgment 
on a separate claim
. 
Colvin
 and 
Duldulao 
are thus distinguishable from the case at hand.

The parties have not cited, and our research has not disclosed, any controlling legal authority on the precise issue before us. Nonetheless, because the plaintiff’s due process and uniformity claims remain interlocutory in nature, the general legal principles and the case law discussed above counsel against our reviewing them at this time. We note that a final judgment has been defined as one that “determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.” 
Flores
, 91 Ill. 2d at 112. Significantly, here, were we to affirm the denial of the plaintiff’s summary judgment motion in this appeal, we would simply be holding that summary judgment was not warranted on these claims. We would still be required to remand this cause to the circuit court for further proceedings in which the parties’ rights could be ascertained and fixed absolutely.

In declining to review this denial of summary judgment, we also find it important that this appeal was brought pursuant to Supreme Court Rule 302(a). Rule 302(a) provides for direct appeal to this court from final judgments of the circuit courts in cases in which an Illinois statute has been held invalid. 134 Ill. 2d R. 302(a). The primary purpose of Rule 302(a) is to “ ‘preserve stability in our legal system; when legislation has been held unconstitutional, the rule provides for immediate review by the ultimate authority in this state on the law.’ ” 
Hearne v. Illinois State Board of Education
, 185 Ill. 2d 443, 454 (1999), quoting 
Trent v. Winningham
, 172 Ill. 2d 420, 425 (1996). This purpose was fulfilled in this appeal by our review of the final judgment in which the circuit court declared Public Act 89–21 unconstitutional in its entirety. Rule 302(a) does not require us to also review the denial of summary judgment on a separate claim that remains interlocutory in nature.

As a final matter, the plaintiff argues that we should consider its due process and uniformity claims under the principle that a reviewing court may sustain the decision of the circuit court on any ground called for by the record, regardless of whether that court made its decision on the proper ground. See 
Estate of Johnson v. Condell Memorial Hospital
, 119 Ill. 2d 496, 502 (1988). This principle does not persuade us to address the plaintiff’s claims for which summary judgment was denied. Our earlier analysis squarely explains why these claims should not be reviewed at this time, and we adhere to it.

For the reasons stated, we decline to review the denial of summary judgment on the plaintiff’s due process and uniformity claims. Because these claims have never been finally resolved in the circuit court, we remand this cause to the circuit court for appropriate further proceedings.

CONCLUSION

Public Act 89–21 does not violate the single subject rule. The grant of summary judgment to the plaintiff is therefore reversed. This cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

Reversed and remanded.

CHIEF JUSTICE FREEMAN, specially concurring:

Although I fully concur in the majority’s opinion, I write separately in order to bring needed clarification to the single subject rule analysis that this court has endeavored to employ. Such guidance is necessary, in my view, in light of t
he dissent’s characterization of this court’s recent decisions in 
Reedy
 and 
Johnson
.

Initially, the dissent determines that Public Act 89–21 simply fails to address a single subject as mandated by the Illinois Constitution. Slip op. at 20 (Heiple, J., dissenting, joined by Harrison, J.). This conclusion is reached, however, not by any reasoned analysis, but by a mere listing of the abbreviated titles of the various acts amended by Public Act 89–21 and a characterization of the Act as encompassing an “overwhelming breadth of subjects.” This approach fails in that it makes the quantity and facial diversity of provisions the deciding factors in whether an act meets single subject rule scrutiny. On the contrary, an inveterate principle that has guided single subject rule analysis is that the courts are to give wide latitude to the legislature in its choice of acts’ subjects. 
Reedy
, 186 Ill. 2d at 8-9; 
Johnson
, 176 Ill. 2d at 515; 
Dunigan
, 165 Ill. 2d at 255; 
see also 
Cutinello
, 161 Ill. 2d at 423 (acknowledging that “[t]he number of provisions in an act is not determinative of its constitutionality”).

A second and, perhaps, more troubling issue is the dissent’s insistence that the recent jurisprudence of this court has somehow created a separate, heightened analytical step to be used in making single subject rule determinations. Slip op. at 21 (Heiple, J., dissenting, joined by Harrison, J.). That is, the dissent has taken the requirement that an act’s provisions have some legitimate relation to each other to mean that all of an act’s provisions must be interrelated beyond their common connection to a single subject. The dissent makes this analytical assumption and then inexplicably attributes the court’s decisions in 
Johnson
 and 
Reedy
 to that very assumption. I find no support for such a stance.

What may be lacking, perhaps, is a realization that the single subject rule analysis employed by the court is already two-tiered. What is apparent from our decisions in 
Johnson
 and 
Reedy
 especially is that, at some point, a court should look to see whether an act, 
on its face
, involves a legitimate single subject. In carrying out this portion of the single subject rule analysis, the court has considered, for example, whether the stated subject of an act is so broad as to frustrate the very purpose of the single subject clause of the Illinois Constitution. See 
Johnson
, 176 Ill. 2d at 517-18; 
Reedy
, 186 Ill. 2d at 12. An additional component to this analysis is the separate inquiry of whether the various provisions within an act all relate to the proper subject at issue. This is what has been meant by the requirement that an act’s provisions have “a natural or logical connection,” or “a legitimate relation to each other.”

Indeed, this two-factor analysis formed the basis for the court’s decisions in both 
Johnson
 and 
Reedy.
 In 
Johnson
, it was determined that the act’s subject of “public safety” was, on its face, too broad and vague to withstand single subject rule scrutiny and that the act’s provisions failed to relate to a single legitimate subject. In other words, when the purported subject of “public safety” was rejected, there was no proper subject that could reconcile the various provisions of the act in question. 
Johnson
, 176 Ill. 2d at 517-18. Similarly, in 
Reedy
, we determined that the subject of “matters involving county State’s Attorneys” was not legitimate by virtue of being overbroad and that the provisions of the act failed to relate to one legitimate subject. When this court concluded in 
Reedy
 “that there is no ‘natural and logical connection’ that could justify the enactment of these various matters in one act,” the court was addressing the absence of a legitimate single subject that could unite the act’s provisions. 
Reedy
, 186 Ill. 2d at 12.

In the present case, it is readily apparent that all of the provisions within Public Act 89–21 are related, since they all pertain to the subject of state budget implementation. That is, the Act’s provisions are interrelated and have a natural and logical connection to each other in that they share the common trait of effectuating the state budget. Additionally, the subject of state budget implementation, unlike the subjects in 
Johnson
 and 
Reedy
, is legitimate. It is not an overbroad and vague category that attempts to unite discordant measures; rather, it is a definite subject that implicates all of the Act’s provisions in a similar manner. It is for these reasons that Public Act 89–21 does not violate the single subject rule.

A third level of analysis, as propounded by the dissent, is not required by the single subject clause, perhaps for the obvious reason that it would drastically restrict the legislature’s ability to enact necessarily inclusive laws. The court’s decision in 
American Badge Co. v. Lena Park Improvement Ass’n
, 246 Ill. 589 (1910), is instructive, for, even under the more restrictive predecessor to our current single subject clause (Ill. Const. 1870, art. IV, §13), the court stated:

“Every act must embrace but a single subject, but it may include other provisions not foreign to the general subject, which legitimately tend to accomplish the legislative purpose as to that subject. An act may contain many provisions and details for the carrying out of its purpose. The object of this provision of the constitution is to prevent the joining in one act of incongruous or unrelated matters. It was not its design to embarrass legislation by making laws unnecessarily restrictive in their scope and operation ***.” 
American Badge Co.
, 246 Ill. at 590.

As has always been the case, all that the Constitution requires is that an act’s provisions be united by a single legitimate subject.

Today’s decision, perhaps, serves as a reminder of the limited scope of the single subject rule. Although the rule is designed to combat the type of legislative defects found in 
Johnson
 and 
Reedy
, the doctrine is not meant to unfairly hamper the legislature’s ability to pass proper laws whose provisions happen to be multifaceted. As society becomes increasingly complex, acts whose single subjects range from criminal law, to taxation, to implementation of the state budget will necessarily address various laws and entities. Provided that those acts consist of legitimate single subjects and that their contents all have legitimate relations to those subjects, such acts fully comport with the mandate of the single subject clause of the Illinois Constitution. For these reasons, I concur in the court’s judgment.

JUSTICE RATHJE joins in this special concurrence.

JUSTICE HEIPLE, dissenting:

The Illinois Constitution of 1970 provides:

“Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject.” Ill. Const. 1970, art. IV, §8(d).

With today’s opinion, this court’s brief flirtation with the enforcement of the single-subject clause is at an end. Because today’s majority opinion improperly renders the single-subject clause a dead letter, I respectfully dissent.

During the 27 years between the adoption of our Illinois Constitution of 1970 and this court’s decision in 
Johnson v. Edgar
, 176 Ill. 2d 499 (1997), this court invalidated only one public act on single-subject grounds. See 
Feuhrmeyer v. City of Chicago
, 57 Ill. 2d 193 (1974). Beginning with this court’s 1997 decision in 
Johnson
, however, this court has, on two separate occasions, held that the General Assembly exceeded its constitutional authority by failing to confine a legislative enactment to a single subject. In 
Johnson
, this court considered the constitutionality of Public Act 89–428, which was entitled “An Act in relation to public safety.” In its six articles, the Act contained numerous substantive provisions, including: the creation of the Child Sex Offender Community Notification Law; the creation of the offense of predatory criminal sexual assault of a child; an amendment to the Juvenile Court Act allowing the prosecution of certain juveniles as adults; the creation of the Environmental Impact Fee Law; an amendment to the Cannabis Control Act increasing the felony classifications for possession of certain amounts of cannabis; an amendment to the Unified Code of Corrections decreasing the frequency of prisoners’ parole hearings; and amendments to the statutory definition of the offense of eavesdropping, exempting certain kinds monitoring by businesses engaged in quality control, educational training, and research purposes. Rebuffing attempts to justify the law in 
Johnson
 as related to the single subject of “public safety,” this court wisely reasoned that:

 “Were we to conclude that the many obviously discordant provisions contained in Public Act 89–428 are nonetheless related because of a tortured connection to a vague notion of public safety, we would be essentially eliminating the single subject rule as a meaningful constitutional check on the legislature’s actions.” 
Johnson
, 176 Ill. 2d at 517-18.

Accordingly, we held that Public Act 89–428 was invalid because it violated the single-subject clause of the Illinois Constitution.

Similarly, in 
People v. Reedy
, 186 Ill. 2d 1 (1999), this court considered a single-subject challenge to Public Act 89–404. That act amended several statutory sections, including provisions relating to: duties and jurisdiction of local law enforcement agents; the definition of insanity within the meaning of the Criminal Code; drug forfeiture procedures and the allocation of proceeds from the sale of forfeited assets; sentencing guidelines for convictions under the Controlled Substances Act; truth-in-sentencing legislation; and the treatment of government-operated hospitals under the Hospital Lien Act. Before this court, the State argued that each of the Act’s provisions was connected to the single subject of “ ‘governmental matters which are the responsibility of the various county State’s Attorneys.’ ” 
Reedy
, 186 Ill. 2d at 12. Nevertheless, noting that the Act dealt with as many as five separate legislative topics involving both civil and criminal matters, this court held that: “[t]o say that such a ‘connection’ satisfies the single subject rule strains credulity.” 
Reedy
, 186 Ill. 2d at 12. This court concluded, “As we cautioned in 
Johnson
, the permitted use of such a sweeping and vague category to unite unrelated measures would render the single subject clause of our constitution meaningless. [Citation.]” 
Reedy
, 186 Ill. 2d at 12.

Turning to the facts of the instant case, Public Act 89–21 makes the acts struck down in 
Johnson
 and 
Reedy
 look like models of legislative simplicity. Public Act 89–21 began life as Senate Bill 465, entitled the “FY 1996 Budget Implementation Act.” When the bill reached the joint conference committee, it ballooned in size and was rechristened, “An Act concerning State services, amending named Acts.” In its ultimate form, Public Act 89–21 amended 21 separate acts, including: the State Employees Group Insurance Act of 1971; the Illinois Pension Code; the Illinois Act on the Aging; the Civil Administrative Code of Illinois; the Children and Family Services Act; the Disabled Persons Rehabilitation Act; the State Finance Act; the State Prompt Payment Act; the Illinois Income Tax Act; the State Mandates Act; the School Code; the Nursing Home Care Act; the Child Care Act of 1969; the Riverboat Gambling Act; the Illinois Administrative Procedure Act; the Illinois Public Aid Code; the Abused and Neglected Child Reporting Act; the Juvenile Court Act of 1987; the Adoption Act; the Probate Act of 1975; the Unemployment Insurance Act; and the Tobacco Products Tax Act of 1995. Nevertheless, despite the overwhelming breadth of subjects encompassed by Public Act 89–21, the majority today accepts defendants’ argument that the Act addresses but a single subject: “the state budget.”

Even accepting the majority’s holding that each of Public Act 89–21’s provisions might ultimately impact the state budget, however, that is not sufficient to vindicate the act. As the trial court held, “the single subject rule requires more, namely, that the provisions be related to each other.” The majority today rejects that analysis. According to the majority, our analysis under the single subject clause is strictly confined to the question of whether each provision in a legislative enactment can be said to relate to a single subject. The majority states further that “[t]his court has never held that the single subject rule imposes a second and additional requirement that the provisions within an enactment be related to each other.” Slip op. at 11.

I submit that the majority’s misunderstanding of this court’s single-subject clause jurisprudence might be cured by a more careful reading of the majority’s own opinion. As the opinion correctly states:

“  ‘  “The term ‘subject’ is comprehensive in its scope and may be as broad as the legislature chooses, 
so long as the matters included have a natural or logical connection
. An act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of a legislative purpose. Nor is the constitutional provision a limitation on the comprehensiveness of the subject; rather, 
it prohibits the inclusion of
 ‘
discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other
.’ [Citation.]” ’ ” (Emphasis added.) Slip op. at 8, quoting
 People ex rel. Ogilvie v. Lewis
, 49 Ill. 2d 476, 487 (1971), quoting 
People ex rel. Gutknecht v. City of Chicago
, 414 Ill. 600, 607-08 (1953), quoting 
People ex rel. City of Chicago v. Board of County Commissioners
, 355 Ill. 244, 247 (1934).

Indeed, this court has consistently required, as a check against over-broad legislative subjects, that the provisions of an act be both related to a single subject 
and 
related, in some fashion, to one another. Had the rule been otherwise, recent single-subject decisions of this court might have been resolved differently. For example, in 
Johnson
, it would have been difficult to argue that any of the provisions of Public Act 89–428 had 
no
 connection to public safety. Nevertheless, this court invalidated that act on the ground that the single-subject rule “prohibits the inclusion of ‘ “discordant provisions that by no fair intendment can be considered as having any legitimate relation 
to each other
.” ’ [Citation.]” (Emphasis added.) 
Johnson
, 176 Ill. 2d at 515. Likewise, in 
Reedy
, each of the various provisions of Public Act 89–404 likely did concern governmental matters which were the responsibility of the various county State’s Attorneys. Even so, this court struck down the act, holding that “the General Assembly violates the single subject rule when it includes within one bill unrelated provisions that by no fair interpretation have any legitimate relation 
to one another
.” (Emphasis added.) 
Reedy
, 186 Ill. 2d at 9. Similar formulations of the law appear in 
City of Chicago
, 355 Ill. at 247, 
Gutknecht
, 414 Ill. at 607-08, 
Cutinello v. Whitley
, 161 Ill. 2d 409, 423 (1994), and 
People v. Dunigan
, 165 Ill. 2d 235, 255 (1995). Thus, despite the majority’s inexplicable assertion to the contrary, this court has 
always
 required that the various provisions of a legislative enactment be related to each other. If, by its opinion, the majority means to overrule 
City of Chicago
, 
Gutknecht
, 
Cutinello
, 
Dunigan
, 
Johnson
, and 
Reedy
, it should do so explicitly. Instead, the majority effectively immunizes Public Act 89–21 from single-

subject attack on the ground that each of its many provisions either increases or decreases state expenditures or revenues, or is tangentially related to a provision which does so. It is difficult to conceive of a legislative enactment which would fail to satisfy this empty test.

Applying the above-cited precedent to the provisions of Public Act 89–21, I conclude that there is no natural and logical connection which could justify the enactment of these various matters in one act. Because a majority of this court improperly retreats from its well-settled single-subject jurisprudence, and in so doing eviscerates the single-subject clause of the Illinois Constitution, I dissent.

JUSTICE HARRISON joins in this dissent.