2020 IL App (4th) 190611

FILED
August 6, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| JOHN TILLMAN, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| J.B. PRITZKER, in His Official Capacity as Governor | ) | No. 19CH235 |
| of the State of Illinois; MICHAEL W. FRERICHS, in | ) | |
| His Official Capacity as Treasurer of the State of | ) | |
| Illinois; and SUSANA A. MENDOZA, in Her Official | ) | Honorable |
| Capacity as Comptroller of the State of Illinois, | ) | Jack D. Davis II, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Turner and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1        In July 2019, plaintiff, John Tillman, filed a petition for leave to file a taxpayers' suit against defendants, J.B. Pritzker, Governor of the State of Illinois; Michael Frerichs, Treasurer of the State of Illinois; and Susana Mendoza, Comptroller of the State of Illinois, in their official capacities (collectively, the State Officers), pursuant to section 11-303 of the Code of Civil Procedure (Code) (735 ILCS 5/11-303 (West 2018)). The complaint attached to the petition alleged, in relevant part, that the State had issued bonds in 2003 and 2017 without providing an appropriate "specific purpose" as required by section 9(b) of article IX of the Illinois Constitution. Ill. Const. 1970, art. IX, § 9(b). Tillman's complaint sought to enjoin the State Officers from making any future payments on the 2003 and 2017 bonds.

¶ 2        Later that month, the Attorney General of the State of Illinois entered his

appearance on behalf of the State Officers. The Attorney General filed an objection to Tillman's petition, and Tillman filed a response.

¶ 3      In August 2019, the trial court conducted a hearing on the petition. After considering arguments from the parties, the court took the case under advisement. Shortly thereafter, the court entered a written order denying Tillman's petition for leave to file a complaint, finding (1) the statutes authorizing the 2003 and 2017 bonds set forth their specific purpose with sufficient detail, (2) the filing of the complaint would be an unjustified interference with the application of public funds, and (3) Tillman was asking the court to address a "political question" regarding a judgment made 20 years prior by the legislature, which would "violate the separation of powers."

¶ 4      Tillman appeals, arguing the trial court erred by denying him leave to file his complaint. Tillman contends that the court improperly reached the merits of his case rather than addressing whether the complaint was frivolous or malicious. Tillman asserts that his complaint was not frivolous because the 2003 and 2017 bonds were unconstitutional.

¶ 5      The State responds that the trial court properly rejected the claim because (1) the statutes are constitutional, (2) Tillman could never state a claim for relief, (3) the complaint would be barred by (a) the statute of limitations and (b) laches, and (4) Tillman failed to join bondholders as necessary parties.

¶ 6      We conclude that because Tillman's complaint was not frivolous or malicious, the trial court erred by denying his petition for leave to file it. Accordingly, we remand the case for further proceedings.

¶ 7                     I. BACKGROUND

¶ 8                A. The Petition and Proposed Complaint

¶ 9        In July 2019, Tillman filed a petition for leave to file a taxpayers' suit against the State Officers pursuant to section 11-303 of the Code (735 ILCS 5/11-303 (West 2018)) and attached a copy of the proposed complaint to his petition. In essence, Tillman asserted that the State of Illinois had issued unconstitutional bonds in 2003 and 2017 because the authorizing statutes (see 30 ILCS 330/7.2, 7.6 (West 2018)) failed to provide a specific purpose as required by section 9(b) of article IX of the Illinois Constitution of 1970. According to the complaint, article IX of the constitution provides a limit on the legislature's authority to incur debt in the form of bonds. Sections 9(c) through (e) contain limitations on short term borrowing of general funds to cover budget deficits or refinance existing debt. Ill. Const. 1970, art. IX, § 9(c)-(e). Section 9(b), on the other hand, provides as follows:

"State debt for specific purposes may be incurred or the payment of State or other debt guaranteed in such amounts as may be provided *** in a law passed by the vote of three-fifths of the members elected to each house of the General Assembly ***. Any law providing for the incurring or guaranteeing of debt shall set forth the specific purposes and the manner of repayment." Ill. Const. 1970, art. IX, § 9(b).

¶ 10        The complaint alleged that, when read in context with the structure of article IX, the term "specific purpose" in section 9(b) imposed two requirements. According to the complaint, the second sentence sets forth a "procedural" requirement that the specific purpose be set forth in sufficient detail. The first sentence, by contrast, sets forth a "substantive" limitation, requiring the bonds be issued for a purpose other than general funds. That is, specific purposes amount to special projects, capital improvements, and other nonrecurring costs, as distinguished from regularly recurring costs paid out of the general fund.

¶ 11        The complaint alleged that the 2003 bonds were issued and used as a method of

increasing general revenue funds. The revenue from the 2003 bonds was "to be used for the purpose of making contributions to the designated retirement systems." See 30 ILCS 330/7.2(a) (West 2018). Tillman asserted that such payments were typically made from the general revenue fund and the State incurs them every year. Accordingly, the purpose of the bonds was general and not specific.

¶ 12 Regarding the 2017 bonds, the complaint alleged that the purpose was to "pay[ ] vouchers incurred by the State prior to July 1, 2017." See 30 ILCS 330/7.6(b) (West 2018). Tillman contended that the statute was both substantively improper—in that the money to pay past debts, without regard to the type of debt, was unquestionably general and not specific—and procedurally improper because the statute did not state with the required specificity which vouchers were to be paid. The complaint requested the trial court to find the 2003 and 2017 bond statutes unconstitutional and to enjoin the State Officers from making further payments on the bonds.

¶ 13                                B. The Objection

¶ 14 In July 2019, the Attorney General filed an objection to Tillman's petition, requesting the trial court to deny the request to file a complaint on several grounds. First, the Attorney General argued that Tillman was barred by the doctrine of laches because he was aware of the cause of action at the time it arose—when the statutes authorizing the bonds were passed and the bonds issued—but delayed bringing the action for years after the bonds had been sold and the State had made substantial payments on them. Second, the Attorney General asserted that Tillman's claims regarding the 2003 bonds were barred by the five-year statute of limitations for civil actions. See 735 ILCS 5/13-205 (West 2018). Third, the Attorney General claimed Tillman had failed to join all necessary parties to the action by failing to name bondholders as defendants. The Attorney General asserted that the bondholders had a direct financial interest in the outcome

of the suit and would be harmed if not joined as defendants.

¶ 15          Finally, the Attorney General argued that the 2003 and 2017 bond statutes were constitutional. More specifically, the Attorney General contended that Tillman's reading of section 9(b) was incorrect because the constitution did not place any "substantive" restriction on the legislature's ability to issue bonds. Instead, all the legislature was required to do was pass the law with a three-fifths majority and set forth the law's "specific purpose" with sufficient detail. The Attorney General relied upon the Illinois Supreme Court's decision in *People ex rel. Ogilvie v. Lewis*, 49 Ill. 2d 476, 274 N.E.2d 87 (1971), to support this position and to demonstrate that the statutes in question met the standard set forth by the supreme court.

¶ 16          Tillman filed a response in which he argued that laches and the statute of limitations were inapplicable because (1) the suit sought to enjoin only future payments and (2) each payment on the bonds constituted a new injury for limitations purposes. Tillman also argued that the bondholders were not necessary parties.

¶ 17                              C. The Trial Court's Ruling

¶ 18          In August 2019, the trial court conducted a hearing on Tillman's petition at which it heard extensive arguments from the parties and took the case under advisement. Shortly thereafter, the court issued a written order denying Tillman's petition. In the order, the court first set forth the standards applicable to taxpayer lawsuits and identified the issue as "whether or not reasonable grounds exist for filing the suit." The court noted that Tillman was challenging the constitutionality of two statutes and whether reasonable grounds existed could be ascertained only by examining the language of the statutes to determine if they set forth specific purposes.

¶ 19          After stating it was relying on the Illinois Supreme Court's ruling in *Lewis*, the trial court wrote the following:

"In 2003, the legislature's specific purpose for issuing bonds was to contribute to funding the State's five pension systems. In 2017, the stated specific purpose was to make good on health insurance vouchers the State promised to pay to vendors that accepted State issued insurance for services rendered prior to July 1, 2017. This court finds the legislature stated with reasonable detail the specific purposes for the issuance of the bonds and assumption of the debt as well as the objectives to be accomplished by enactment of the legislation."

¶ 20 The trial court found no reasonable grounds existed for filing the proposed complaint and that "to allow the filing of the complaint would result in an unjustified interference with the application of public funds." The court concluded, "Tillman asks this court to address a non-justiciable political question and substitute its judgment for the Illinois Legislature some two decades after it occurred. To do so would be improper and would violate the separation of powers."

¶ 21                                II. ANALYSIS

¶ 22 Tillman appeals, arguing the trial court erred by denying him leave to file his complaint. Tillman contends that the court improperly reached the merits of his case rather than addressing whether the complaint was frivolous or malicious. Tillman asserts that his complaint was not frivolous because the 2003 and 2017 bonds were unconstitutional.

¶ 23 The State responds that the trial court properly rejected the claim because (1) the statutes are constitutional, (2) Tillman could never state a claim for relief, (3) the complaint would be barred by (a) the statute of limitations and (b) laches, and (4) Tillman failed to join bondholders as necessary parties.

¶ 24 We conclude the trial court erred by denying the petition for leave to file Tillman's complaint; accordingly, we decline to address the merits of either parties' further assertions.

¶ 25                    A. The Applicable Law and Standard of Review

¶ 26         Section 11-301 of the Code permits "any citizen and taxpayer" to maintain an "action to restrain and enjoin the disbursement of public funds by any officer or officers of the State government." 735 ILCS 5/11-301 (West 2018). Section 11-303 of the Code states as follows:

> "Such action, when prosecuted by a citizen and taxpayer of the State, shall be commenced by petition for leave to file an action to restrain and enjoin the defendant or defendants from disbursing the public funds of the State. Such petition shall have attached thereto a copy of the complaint, leave to file which is petitioned for. Upon the filing of such petition, it shall be presented to the court, and the court shall enter an order stating the date of the presentation of the petition and fixing a day, which shall not be less than 5 nor more than 10 days thereafter, when such petition for leave to file the action will be heard. ***
>
> Upon such hearing, if the court is satisfied that there is reasonable ground for the filing of such action, the court may grant the petition and order the complaint to be filed and process to issue. The court may, in its discretion, grant leave to file the complaint as to certain items, parts or portions of any appropriation Act sought to be enjoined and mentioned in such complaint, and may deny leave as to the rest." 735 ILCS 5/11-303 (West 2018).

¶ 27         "One of the purposes of [section 11-303] was to provide a check upon the indiscriminate filing of taxpayers' suits." *People ex rel. White v. Busenhart*, 29 Ill. 2d 156, 161, 193 N.E.2d 850, 854 (1963). Accordingly, section 11-303 provides for a "summary proceeding" to determine if the complaint "is justified and should be filed, and by that proceeding seeks to prevent unwarranted interference with the performance of certain public duties." *Hill v. La Salle*

*County*, 326 Ill. 508, 515, 158 N.E. 112, 115 (1927). The appellate court reviews a trial court's decision that no reasonable grounds exist to permit a taxpayer suit to be filed for an abuse of discretion. *Busenhart*, 29 Ill. 2d at 161. For the purposes of evaluating the petition, all well-pleaded allegations in the complaint are taken as true, but the court is not required to consider allegations that are vague, conclusory, or irrelevant. *Id.* at 161, 165. A trial court may deny leave to file if, among other things, the complaint (1) fails to state a claim (*id.* at 165; *Flynn v. Stevenson*, 4 Ill. App. 3d 458, 460, 281 N.E.2d 438, 440 (1972)), (2) is barred by *res judicata* or constitutes an improper collateral attack on a judgment (*Busenhart*, 29 Ill. 2d at 165; *Flynn*, 4 Ill. App. 3d at 460; *Hamer v. Dixon*, 61 Ill. App. 3d 30, 33-34, 377 N.E.2d 820, 823-24 (1978)), or (3) is barred by the statute of limitations (*Flynn*, 4 Ill. App. 3d at 461).

¶ 28 The seminal case on the trial court's inquiry at the initial hearing is *Strat-O-Seal Manufacturing Co. v. Scott*, 27 Ill. 2d 563, 190 N.E.2d 312 (1963). In that case, the Illinois Supreme Court reviewed a trial court's denial of a taxpayer's petition for leave to file a complaint pursuant to the predecessor of section 11-303. *Id.* at 564-65. The taxpayers sought to enjoin the State from providing assistance to workers or their children when those workers were unemployed solely because of participation in a labor strike. *Id.* at 564. The applicable statutes applied to persons "who for unavoidable causes" could not maintain a sufficient standard of living, and they excluded from coverage any "employable person who refuses suitable employment." (Internal quotation marks omitted.) *Id.* at 565. The supreme court wrote that the "sole question in this case is whether the facts alleged in the petition and proposed complaint, taken as true, disclose a reasonable ground for the filing of a suit." *Id.* at 564-65.

¶ 29 The supreme court also then wrote the following:

"After a careful examination of the proposed complaint and the facts alleged

in the petition we are satisfied that reasonable grounds exist for filing suit. As we have indicated, the statute governing these proceedings provides that when suit to restrain the disbursement of public moneys is brought by a citizen taxpayer, it must be commenced by petition for leave to file. The purpose of this requirement was to establish a procedure which would serve as a check upon the indiscriminate filing of such suits. (*Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157[, 139 N.E.2d 227 (1956)].) Prior to its enactment a taxpayer could file suit as a matter of right, and when such a suit was brought for an ulterior or malicious purpose it could seriously embarrass the proper administration of public affairs. As we pointed out in *Hill v. County of La Salle*, 326 Ill. 508, 515[, 158 N.E. 112, 115 (1927)], 'When the right of a public officer charged with the duty and responsibility of the proper application of public funds to disburse such fund is challenged by a lawsuit, it is obvious that for his own protection he will refuse to pay out the money in his custody until the suit is finally adjudicated.'

While it is important, therefore, that unjustified interferences be prevented, it is equally important that suits which do not appear unjustified are not barred or foreclosed. We find nothing in the present record to indicate that the purpose is frivolous or malicious, or that a filing of the complaint is otherwise unjustified.

In this proceeding we are not concerned, of course, with whether the allegations of the proposed complaint can, on hearing, be sustained, and we express no opinion thereon. All we decide is that for the purpose of this inquiry the petition states reasonable grounds for filing suit." *Id.* at 565-66.

¶ 30                                  B. This Case

¶ 31        Applying *Strat-O-Seal*, we likewise conclude that nothing in the record indicates that the proposed complaint was frivolous, filed for a malicious purpose, or is otherwise unjustified. As in *Strat-O-Seal*, resolution of Tillman's claims requires interpreting statutes and a constitutional provision to determine if those statutes are constitutional. Tillman's complaint sets forth a colorable reading of the Illinois Constitution that does not appear to be frivolous on its face. While we express no opinion on the ultimate merits of Tillman's claims, we conclude that the petition and complaint state reasonable grounds for filing suit.

¶ 32        Although the trial court stated in its order that the filing of the suit "would result in an unjustified interference with the application of public funds," the court did not support its finding with reference to any facts or allegations. Before the trial court, the Attorney General argued that the mere filing of the suit would cause the State Officers to default on the bond payments. However, the Attorney General does not advance this argument on appeal, and it appears to us that the most likely course of conduct for the State Officers would be to continue making all of the required bond payments until a court ordered otherwise. Given this context, it is unclear how the filing of Tillman's complaint would be an "unjustified interference with the application of public funds."

¶ 33        We repeat that we express no opinion on the merits of Tillman's claims. We merely conclude for the purpose of this proceeding that Tillman should be permitted to file the complaint. Likewise, we decline to address any of the State Officers' alternative arguments because the trial court did not address them below, and we express no opinion on the merits of those issues. On remand, the State Officers may raise the defenses of the statute of limitations, laches, the failure to join necessary parties, and any other defenses or bases for dismissal they may assert.

¶ 34                              III. CONCLUSION

- 10 -

¶ 35    For the reasons stated, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

¶ 36    Reversed and remanded.

**No. 4-19-0611**

| | |
|---|---|
| **Cite as:** | *Tillman v. Pritzker*, 2020 IL App (4th) 190611 |
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 19-CH-235; the Hon. Jack D. Davis II, Judge, presiding. |
| **Attorneys for Appellant:** | John E. Thies, of Webber & Thies, P.C., of Urbana, and Raoul G. Cantero III, of White & Case LLP, of Miami, Florida, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), for appellees. |